### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 23-54240 |
| FRG Enterprises, LLC, | : | Chapter 11, Subchapter V |
| | : | |
| Debtor. | : | Judge John E. Hoffman, Jr. |

### MOTION OF HB3, LLC, FOR RELIEF FROM AUTOMATIC STAY RELATED TO NON-DEBTOR CLAIMS

Creditor HB3, LLC ("HB3") moves this Court pursuant to 11 U.S.C. § 362(d)(1), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-1 for an order clarifying that the automatic stay does not apply—or, in the alternative, lifting the automatic stay in this case—so as to permit HB3 to continue legal proceedings against various non-debtors in the case of *HB3, LLC v. Fox's Food LLC, et al.*, Case No. 22 CV 7119 (the "Lawsuit"), pending in the Court of Common Pleas for Franklin County, Ohio (the "State Court"). While the claims against the Debtor, FRG Enterprises, LLC (the "Debtor"), are stayed by this bankruptcy proceeding, the following non-debtor individuals and entities are also defendants in the Lawsuit (the "Non-Debtor Defendants"):

1. Fox's Food, LLC ("Fox's Food");
2. Sammy's Bagels, LLC ("Sammy's Bagels");
3. Jeremy Fox;
4. Ronald Fox;
5. Michael N. Gasbarro ("Mr. Gasbarro");
6. The Michael N. Gasbarro Trust (the "Gasbarro Trust");
7. MNG Investments, LLC ("MNG");
8. Heirloom, LLC ("Heirloom"); and
9. Various John Does.

None of the foregoing Non-Debtor Defendants are protected by the automatic stay in this case. Nonetheless, the Debtor filed in the Lawsuit a *Notice of Filing Under Bankruptcy Code and Suggestion of Stay*, attached as <u>Exhibit A</u> (the "Suggestion of Stay"), which states generally that

because of the filing of this case the Lawsuit is stayed, without clarifying for the State Court that

the stay only applies to the Debtor. Thus, out of an abundance of caution, to ensure that the

automatic stay is not inadvertently violated, and to provide appropriate guidance to the State Court,

HB3 seeks an order indicating that the automatic stay does not apply to the Non-Debtor

Defendants. Alternatively, should this Court determine that the automatic stay applies to the Non-

Debtor Defendants, HB3 respectfully requests that the Court issue an order lifting the stay as to

the Non-Debtor Defendants.

At this time, HB3 is not seeking any authority to proceed against the Debtor or property of

the Debtor's bankruptcy estate, nor is HB3 seeking to enforce any injunction against third parties

dealing with the Debtor as had previously been ordered by the State Court in the Lawsuit.

A memorandum in support follows.

Respectfully submitted,

/s/ James A. Coutinho
Rick L. Ashton         (0077768)
James A. Coutinho      (0082430)
Andrew D. Rebholz      (0102192)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215
T: (614) 221-8500      F: (614) 221-5988
coutinho@asnalaw.com; ashton@asnalaw.com

&

Michael L. Dillard, Jr. (0083907)
Tiffany L. Carwile (0082522)
ARNOLD & CLIFFORD LLP
115 W. Main Street, Suite 400
Columbus, Ohio 43215
Tel: 614.460.1600
Fax: 614.469.1134
mdillard@arnlaw.com; tcarwile@arnlaw.com

*Counsel for HB3, LLC*

<u>**MEMORANDUM IN SUPPORT**</u>

I.    **BACKGROUND INFORMATION**

A.    **Procedural Posture**

1.    In October 2022, HB3 filed the Lawsuit against the Debtor, Fox's Food, Jeremy

Fox, Ronald Fox, and Sammy's. In the Lawsuit, as more fully set forth below, HB3 sought to

enforce a License and Supply Agreement (the "Supply Agreement") between it and Fox's Food

and, among other claims, to set aside a fraudulent transfer of assets and operations from Fox's

Food to the Debtor. That is, HB3 alleged that the Debtor was a part of a conspiracy to defraud HB3

through a coordinated fraudulent transfer scheme made to look like a legitimate business deal. In

fact, the Debtor is just a mere continuation of Fox's Food and the entire reason for the Debtor's

existence is to assist Fox's Food and its principals in avoiding liability under the Supply

Agreement.

2.    Upon filing the Lawsuit, HB3 filed a motion for a temporary restraining order and

preliminary injunction to preserve the status quo and enforce the parties' Supply Agreement.

Following a contested hearing, the State Court Duty Judge granted a temporary restraining order

in favor of HB3, which order required Fox's Food and the Debtor to operate under the Supply

Agreement. The parties then conducted expedited discovery ahead of the preliminary injunction

hearing.

3.    After a two-day hearing on HB3's preliminary injunction request, the State Court

Magistrate issued a decision finding in favor of HB3. A copy of the *Magistrate's Decision* is

attached as <u>Exhibit B</u>. The Magistrate's Decision outlines findings of an actual intent by Jeremy

Fox and Fox's Food to defraud HB3 by transferring assets to the Debtor. Magistrate's Decision at

¶7 ("In creating FRG and transferring the assets of Fox's Food to FRG, Jeremy Fox intended to

avoid Fox's Food's obligations to HB3 under the Supply Agreement. Accordingly, there is proof of **actual intent** to defraud HB3 under R.C. 1336.04(A)(1)." (emphasis added)).

4.      The Magistrate found multiple badges of fraud, indicated a substantial likelihood that HB3 would prevail on its breach of contract claims, found the same likely outcome for HB3's tortious interference claims against Sammy's and Jeremy Fox, and further indicated that HB3 would likely prevail on its fraud claims. As stated succinctly by the Magistrate: "HB3 has established a substantial likelihood that it will prevail on the merits of its claim that the Asset Purchase Agreement between Fox's Food and FRG was entered into fraudulently for the purpose of Fox's Food escaping liability to HB3 under the written Supply Agreement and the oral agreement regarding the North Market Store, and that HRG (*sic*) is therefore liable for the debts and liabilities of Fox's Food arising under both agreements." Magistrate's Decision, p. 13.

5.      Based on her findings, the State Court Magistrate made a report and recommendation for a preliminary injunction enjoining (i) Fox's Food, the Debtor, Jeremy Fox, and any other party from attempting to abandon or breach the Supply Agreement; (ii) Sammy's, Jeremy Fox, and any other party from interfering with the Supply Agreement; (iii) Fox's Food, the Debtor, Jeremy Fox, and all others from fraudulently dissipating the assets of Fox's Food. Magistrate Decision, p. 15.

6.      The defendants in the Lawsuit filed objections to the Magistrate's Decision. Briefing on the objections was completed in December 2022, and the parties have engaged in some discovery while waiting for the State Court's decision on the adoption of the Magistrate's Decision, during which time the temporary restraining order has been active. After the objections were filed, based on discovery and evidence revealed at the preliminary injunction hearing, HB3

sought leave to file an amended complaint which added Mr. Gasbarro, the Gasbarro Trust, MNG, and Heirloom as defendants.

7.      The Debtor filed this case prior to the State Court ultimately ruling on its adoption of the Magistrate's Decision.

8.      After this case was filed, the Debtor filed the Suggestion of Stay in the Lawsuit in which it outlined the various applicable provisions of 11 U.S.C. § 362(a) and then generally states: "based on the foregoing, FRG respectfully submits that the instant action is stayed."[1] Of course, as detailed in the cases below, the automatic stay does not apply to the Non-Debtor Defendants. However, out of an abundance of caution, to ensure that the automatic stay is not inadvertently violated, and to provide appropriate guidance to the State Court, HB3 seeks an order indicating that the automatic stay does not apply to the Non-Debtor Defendants (or, to the extent the automatic stay applies, lifting the stay as to the Non-Debtor Defendants).

**B.      Factual Background**

9.      HB3 operates a retail and wholesale bagel, kosher bakery, and delicatessen business under the names "Block's Hot Bagels" and "Block's Bagels" (collectively "Block's"). The Block's business has been operated by Columbus-resident Harold Block since 1967. Magistrate's Decision at ¶1.

10.      In 2016, HB3 was operating two stores: a production-and-retail facility at McNaughten Center in Columbus, Ohio, as well as a retail store on East Broad Street near Bexley, Ohio (the "Original Broad Street Store"). Further in 2016, Jeremy Fox was operating a food cart called "Short North Bagel and Deli" and was buying Block's bagels to supply his business. *Id.* at ¶3.

---

[1] It is unclear whether the Suggestion of Stay was intentionally ambiguous as to the breadth of the automatic stay, but it implies that the entire proceeding is stayed.

11.     At that time, Harold Block, Steve Block (Harold's son), Jeremy Fox, and Ronald Fox (Jeremy's father) developed a plan, pursuant to which Jeremy Fox would open and operate a new Block's store in Bexley, Ohio (the "Bexley Store") as HB3' s licensee, and pursuant to which HB3 would not open a store in Bexley, Ohio. *Id.* at ¶4.

12.     That year, Jeremy Fox formed Fox's Food, *Id.* at ¶5, and on September 28, 2016, HB3 and Fox's Food entered into the Supply Agreement. *Id.* at ¶6.

13.     Under the Supply Agreement, Fox's Food is granted the right to use the "Block's" name and related intellectual property rights in connection with the sale, marketing, and distribution of bagels and related bagel and deli products at and within a two-mile radius of the Bexley Store. In exchange, Fox's Food is obligated, for a period of ten years, to acquire all specified products, including bagels, bagel-related products, breads, challahs, desserts, chicken salad, tuna salad, egg salad, and cream cheese (the "Products") from HB3, at wholesale prices set by HB3. Fox's Food is further obligated to pay a license fee and performance bonus payments to HB3. *Id.* at ¶6. Fox's Food owes HB3 between $225,000.00 and $275,000.00 in performance bonus payments[2] and $137,500.00 in license fees that have never been paid. *Id.* at ¶9.

14.     In February 2017, Fox's Food opened the Bexley Store. HB3 permitted Jeremy Fox to use equipment from the Original Broad Street Store, which equipment, while never paid for, remains at and continues to be used by Fox at the Bexley Store. *Id.* at ¶7. *See also* Statement of Financial Affairs, Doc. 34, Item No. 21 (indicating the Debtor as holding and controlling property owned by HB3).[3]

---

[2] The performance bonus changes depending on annual sales, and HB3 does not have actual figures yet for each of the subject years.

[3] While the Debtor appears to dispute HB3 is the rightful owner of certain assets/equipment currently in the Debtor's possession, the Debtor's principal, Jeremy Fox, during a deposition, admitted that HB3 owned the equipment at issue, admitted that Fox's Food, the Debtor's predecessor entity, owed some thousands of dollars to HB3 for that equipment, and admitted that the Debtor currently uses the equipment, purportedly leasing it from Fox's Food for $500 per month.

15.     In 2019, Jeremy Fox decided to open another restaurant using the "Block's" name (the "North Market Store") under the same terms as the Bexley Store with respect to the exclusive supply of Products by HB3. An oral agreement was made, between HB3 and Fox's Food, for Fox's Food to open the North Market Store for an annual license fee of $12,500, which fees have never been paid. Magistrate's Decision at ¶¶ 11-12.

16.     In early 2021, Jeremy Fox contacted Sammy's Foods LLC (Sammy's Foods), a direct competitor of HB3 and a company with bagel production capabilities, to negotiate a purchase of Sammy's Foods. *Id* at ¶13. He formed a new entity—Sammy's Bagels, LLC—and used that entity to purchase Sammy's Foods without ever informing HB3. *Id* at ¶¶ 14-15.

17.     As a part of that process, Jeremy Fox performed a cost analysis in which he compared the cost of buying products from Sammy's Bagels, which he owned, with the cost of buying products from HB3. Jeremy Fox determined that he could save more than $133,000 per year by having Sammy's Bagels supply his restaurants rather than by having HB3 supply his restaurants. *Id* at ¶16.

18.     Thereafter, Jeremy Fox, in conjunction with his father, Ronald Fox, and business associate, Mr. Gasbarro, developed a plan to transfer the assets of Fox's Food to a new entity, the Debtor, and to begin operating as "Fox's Bagels." The purpose of that plan was to avoid the Supply Agreement. *See Id* at ¶18.

19.     Jeremy Fox formed the Debtor in July 2022 and in September 2022 caused Fox's Food and the Debtor to enter into an Asset Purchase Agreement (the "APA") whereby Fox's Food would sell all its assets to the Debtor, with the exception of certain excluded assets, including the Supply Agreement. *See Id* at ¶¶ 19-20. The two main purposes for the APA between Fox's Food and the Debtor were to enable Fox's Food to avoid its liability to HB3 under the Supply Agreement

and the oral agreement regarding the North Market Store, and to permit Sammy's Bagels, rather than HB3, to supply Products to Jeremy Fox's restaurants. *Id.* at ¶23.

20.     On October 2, 2022, Jeremy Fox conducted business as usual as "Block's Bagels." After he closed the Bexley Store and the North Market Store for the evening, he fired all his employees who had been receiving paychecks from Fox's Food, immediately rehired those same individuals as employees of the Debtor, changed the signage at the restaurants from "Block's Bagels" to "Fox's Bagel and Deli," put out menus with new designs offering largely the same fare, and began having Sammy's Bagels supply his restaurants. *Id.* at ¶24.

21.     Everything in the Bexley Store and the North Market Store, except the store names, remained the same—the locations, equipment, fixtures, furniture, computers, phones, phone numbers, and employees. Jeremy Fox and the Debtor changed nothing but the signage on the front of the stores and the design and format of the menus. *Id.* at ¶25. Jeremy Fox advertised that his Block's locations were out of business, but that instead they would be "Fox's Bagel and Deli." *Id.* at ¶¶ 26-27.

22.     Thereafter, until the State Court issued its temporary restraining order, the Debtor's operations at the Bexley Store and North Market Store were being supplied by Sammy's Bagels. *Id.* at ¶ 30. Thus, Jeremy Fox and his companies were temporarily successful in using the formation of the Debtor and fraudulent transfer of assets to the Debtor to avoid Fox's Food's obligations to HB3 under the Supply Agreement. However, the success was temporary in that the State Court issued a temporary restraining order and then issued an injunction finding that HB3 would likely prevail on the merits of its case.

23.     The Debtor has now filed this bankruptcy case in an attempt to reorganize its affairs by using the Bankruptcy Code to keep HB3 from enforcing fraudulent transfer and successor in interest liabilities against the Debtor. The Debtor now seeks relief from this Court, essentially requesting that the Court bless the fraudulent activities that are clearly described in the Magistrate's Decision. The Debtor's request reveals that it is unlikely that the Debtor will be able to propose a plan in good faith.

24.     While these bankruptcy matters are litigated, HB3 is entitled to proceed under its state law claims against the Non-Debtor Defendants because they are not protected by the automatic stay.

## II.     LAW & ARGUMENT

The Bankruptcy Code provides for the imposition of the automatic stay under 11 U.S.C. § 362. "The Sixth Circuit has made it abundantly clear that the § 362(a)(1) stay of acts 'against the debtor' is to be strictly construed." *In re Cincom iOutsource, Inc.*, 398 B.R. 223, 226 (Bankr. S.D. Ohio 2008) (citing *Patton v. Bearden*, 8 F.3d 343, 348-49 (6th Cir. 1993)). For example, in *Patton*, the Sixth Circuit evaluated whether the automatic stay extended to the partners of a debtor partnership who attempted to stop non-bankruptcy litigation against them. *Patton*, 8 F.3d at 348. The Court of Appeals held that the automatic stay "does not extend…to separate legal entities such as corporate affiliates, partners in debtor partnerships or to codefendants in pending litigation." *Id.* at 349 (original emphasis removed).

Thus, in the absence of a bankruptcy court order to the contrary, the automatic stay does not apply to a non-debtor. *In re Johnson*, 548 B.R. 770, 787 (Bankr. S.D. Ohio 2016) ("It is axiomatic that § 362(a)(1) does not automatically give rise to a general stay of creditors' rights to pursue nondebtor codefendants, even those with some relationship to the debtor."); *see also Lynch*

*v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."). Only under "unusual circumstances" can the stay be extended using the equitable powers of the Bankruptcy Court under 11 U.S.C. § 105(a). *Patton*, 8 F.3d at 349. Those unusual circumstances arise when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Am. Imaging Servs., Inc. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 963 F.2d 855, 861 (6th Cir.1992) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)). But that extension does not happen automatically in the Sixth Circuit. *Johnson*, 548 B.R. at 788.

In this instance, although each of the Non-Debtor Defendants has ties to the Debtor in some manner, none have themselves filed bankruptcy nor are they co-debtors in this proceeding. They are mere co-defendants in pending litigation, and as such, the automatic stay does not apply to them automatically. Even if the request were made to extend the stay to the Non-Debtor Defendants, there is no identity between them and the Debtor that would justify that extension. For example, as to one of the Non-Debtor Defendants, Fox's Food, the Debtor itself has scheduled that it holds a civil claim against Fox's Food for indemnification arising out of the APA transactions. *See* Schedule A/B, Doc. 34, Item No. 75.[4] It can hardly be said then that the stay should apply as to HB3 pursuing Fox's Food or Jeremy Fox, the individual who instigated fraud leading to this legal predicament in the first place. Nor could the Debtor rationally claim that any Non-Debtor Defendant should be protected to prevent some type of indemnification claim against

---

[4] Of course, the Debtor attributes a $0.00 value to the claim because, as a part of the fraudulent transfer scheme, Fox's Food was stripped of all value in favor of the Debtor.

the Debtor; after all, the claims of HB3 arise out of direct contract claims, intentional torts and intentional fraud which are unlikely to be subject to indemnity. *See* Magistrate's Decision at ¶33. Ultimately, to apply the stay to any party but the Debtor would permit that Non-Debtor Defendant "to receive a major benefit of the bankruptcy process without having to be subject to any of its burdens and safeguards. *In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005).

Based on the foregoing, the automatic stay clearly does not apply to the Non-Debtor Defendants. While this may be a "black letter bankruptcy principle," *In re Irwin*, 457 B.R. 413, 418 (Bankr.E.D.Pa.2011) (quoted by *Johnson*), because the Debtor filed the vague and ambiguous Suggestion of Stay in the State Court, prudence dictates that HB3 seek a prospective order clarifying that the automatic stay does not apply to the Non-Debtor Defendants in order to avoid inadvertently violating the automatic stay. *See Johnson*, 548 B.R. at 788 ("Most cases regarding § 362(a)(1)'s application to litigation against nondebtor codefendants involve a prospective determination of whether the automatic stay applies."). The clarifying order will also benefit the State Court, which has been presented by the Debtor with a general Suggestion of Stay that does not differentiate between the application of the automatic stay as between the Debtor and the Non-Debtor Defendants.

Alternatively, if this Court determines that the stay does apply to the Non-Debtor Defendants, the stay may be lifted in accordance with 11 U.S.C. § 362(d) for cause. In this instance, cause exists insomuch as HB3 has independent claims against each of the Non-Debtor Defendants and it is not seeking in any way to assert claims against the Debtor or property of the bankruptcy estate. For example, HB3 is not seeking at this time to enforce the temporary restraining order that prevented the Debtor from ordering its food supplies outside the Supplier Agreement. Nor is HB3 seeking to recover (at this time) any of its assets that are presently being held by the Debtor and

11

used in the Debtor's operations. It simply seeks to proceed with its independent claims against the

Non-Debtor Defendants, which is permitted under the Bankruptcy Code and well-established

jurisprudence regarding the automatic stay.

## IV.    CONCLUSION

Based on the foregoing, HB3 respectfully requests that the Court enter an order confirming

the automatic stay of 11 U.S.C. § 362(a) does not apply to the Non-Debtor Defendants, or, if it

applies, lifting the automatic stay as to the Non-Debtor Defendants such that the claims against

them in the Lawsuit may be pursued.

Respectfully submitted,

/s/ James A. Coutinho
Rick L. Ashton          (0077768)
James A. Coutinho      (0082430)
Andrew D. Rebholz     (0102192)
Allen Stovall Neuman & Ashton LLP
10 W. Broad St., Ste. 2400
Columbus, OH 43215
T: (614) 221-8500      F: (614) 221-5988
coutinho@asnalaw.com;
rebholz@asnalaw.com

&

Michael L. Dillard, Jr. (0083907)
Tiffany L. Carwile (0082522)
ARNOLD & CLIFFORD LLP
115 W. Main Street, Suite 400
Columbus, Ohio 43215
Tel: 614.460.1600
Fax: 614.469.1134
Email:
            mdillard@arnlaw.com
            tcarwile@arnlaw.com

*Counsel for HB3, LLC*

EXHIBIT A
Page 1 of 2

IN THE COMMON PLEAS COURT, FRANKLIN COUNTY, OHIO

HB3, LLC,

        Plaintiff,

                                          Case No. 22-CV-7119

   vs.

                                          Judge McIntosh

Fox's Food, LLC, et al.,

        Defendants.

## NOTICE OF FILING UNDER BANKRUPTCY CODE AND SUGGESTION OF STAY

     FRG Enterprises, LLC ("FRG"), Defendant herein notifies the Court that on December 6, 2023, FRG filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), which is now pending in the United States Bankruptcy Court, Southern District of Ohio, Eastern Division ("Bankruptcy Court") at Columbus, Ohio, Case No. 2:23-bk-54240 (the "Bankruptcy Case").

     The filing of the Bankruptcy Case invoked the provisions of 11 U.S.C. §362(a), which provides, in pertinent part:

> (a)    except as provided in subdivision (b) of this section, a petition filed under Section 301, 302, or 303 of title, . . . operates as a stay, applicable to all entities of--
>
> (1)   the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commended before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case;
>
> (2)   the enforcement, against the debtor or against the property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4)  any act to create, perfect, or enforce any lien against property of the estate;

(5)  any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; . . .

11 U.S.C. Section 362(a).

Therefore, based on the foregoing, FRG respectfully submits that the instant action is stayed.

Respectfully submitted,

*/s/  Matthew T. Schaeffer*
Matthew T. Schaeffer (0066750)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
(614) 221-3289 / Fax (614) 221-0479
E-Mails:  *MSchaeffer@BaileyCav.com*
*Proposed Bankruptcy Counsel For FRG
Enterprises, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Notice of Filing Bankruptcy Code and Suggestion of Stay was served electronically on the date of filing through the Court's Electronic Filing System on all Electronic Filing System participants registered in the case at the email address registered with the Court.

*/s/  Matthew T. Schaeffer*
Matthew T. Schaeffer  (0066750)

fGor4883-2688-7061v1

# IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO
## GENERAL DIVISION

| | | |
|---|---|---|
| **HB3, LLC,** | ] | **Case No. 22CV-07119** |
| **Plaintiff,** | ] | **Judge Stephen L. McIntosh** |
| **vs.** | ] | **Magistrate Pamela Broer Browning** |
| **Fox's Food LLC, et al.,** | ] | |
| **Defendants.** | ] | |

## Magistrate's Decision

**Browning, M.**

Pursuant to the Court's October 18, 2022 Order of Reference, the undersigned Magistrate conducted a hearing on November 7 and 8, 2022 on Plaintiff's October 13, 2022 motion for a preliminary injunction against Defendants. Plaintiff presented the testimony of Jeremy Fox, Jason Block, and Michael Gasbarro. Plaintiff's Exhibits 1, 2, 4-11, 13-15, and 21- 32 were admitted into evidence. Defendants presented the testimony of Jeremy Fox and Michael Gasbarro. Defendants' Exhibits A, B, G, H, K (1-6), L (1-11), M-R, S (1-5), T (1-7), and V were admitted into evidence.

The hearing was recorded by the Jefferson Audio Video System (JAVS) in Courtroom 4C of the Franklin County Common Pleas Courthouse, located at 345 South High Street in Columbus, Ohio. The parties engaged a private court reporter to transcribe the JAVS recording. On November 17, 2022, the parties jointly filed the hearing transcripts.

On November 18, 2022, pursuant to the Magistrate's post-hearing order, the parties filed proposed findings of fact and conclusions of law.

Having weighed the credible evidence admitted at the hearing on November 7 and 8, 2022, having taken judicial notice of the prior proceedings in this case, and having considered the parties' proposed findings of fact and conclusions of law, the Magistrate hereby renders the following decision **GRANTING** Plaintiff's motion for a preliminary injunction against Defendants.

### <u>Findings of Fact</u>

1.      Plaintiff is HB3, LLC ("HB3"), an Ohio limited liability company that was formed in 2010 and has its principal place of business in Franklin County, Ohio.  HB3 operates a retail and wholesale bagel, kosher bakery, and delicatessen business under the names "Block's Hot Bagels" and "Block's Bagels" (collectively "Block's").  At all relevant times, HB3 has been wholly owned by Columbus, Ohio resident Harold Block, who opened a small bagel shop under the "Block's" name in Columbus in 1967, using recipes from his uncle who had a bakery in New York City.  Harold Block is 89 years old and actively runs the day-to-day business of HB3, overseeing the company's 34 employees, some of whom have been employed by the company for more than 30 years.  His son, Steven Block, also worked in the family business.

2.      Defendants are Fox's Food LLC ("Fox's Food"), FRG Enterprises, LLC ("FRG"), Sammy's Bagels, LLC ("Sammy's Bagels"), Jeremy Fox, and Ronald Fox.  Fox's Food, FRG, and Sammy's Bagels are Ohio limited liability companies with their principal places of business in Franklin County, Ohio.  Jeremy Fox and Ronald Fox are individuals residing in Franklin County, Ohio.  Jeremy Fox is the son of Ronald Fox.  At all relevant times, Jeremy Fox has been the sole owner of, and has exercised control over, Fox's Food and Sammy's Bagels.

3.      In 2016, HB3 was operating a "Block's Hot Bagels" production-and-retail facility at McNaughten Center in Columbus, Ohio (the "McNaughten Store"), as well as a "Block's Bagels"

Case No. 22CV-07119                                                                                              2

store at 3415 East Broad Street near Bexley, Ohio (the "Original Broad Street Store"). In 2016, Jeremy Fox was operating a food cart called "Short North Bagel and Deli" and was buying Block's bagels to supply his business.

4.     In 2016, HB3 began shifting some of its operations. Specifically, Harold Block, Steve Block, Jeremy Fox, and Ronald Fox developed a plan, pursuant to which Jeremy Fox would open and operate a new Block's store in Bexley, Ohio (the "Bexley Store") as HB3's licensee, and pursuant to which HB3 would not open a store in Bexley, Ohio.

5.     In 2016, Jeremy Fox formed Fox's Food.

6.     On September 28, 2016, HB3 and Fox's Food entered into a written "License and Supply Agreement" ("Supply Agreement"). Under the Supply Agreement, Fox's Food is granted the right to use the "Block's" name and related intellectual property rights in connection with the sale, marketing, and distribution of bagels and related baked and deli products at and within a two-mile radius of the Bexley Store. Under the Supply Agreement, Fox's Food is obligated, for a period of ten years, to acquire all specified products, including bagels, bagel-related products, breads, challahs, desserts, chicken salad, tuna salad, egg salad, and cream cheese (the "Products") from HB3, at wholesale prices set by HB3. Under the Supply Agreement, Fox's Food is obligated to pay a license fee and performance bonus payments to HB3. Jeremy Fox, as the sole owner of Fox's Food, signed the Supply Agreement on behalf of Fox's Food.

7.     In February 2017, Fox's Food opened the Bexley Store. HB3 permitted Jeremy Fox to use equipment from the Original Broad Street Store, which equipment, while never paid for, remains in the possession of Jeremy Fox and is being used at the Bexley Store.

8.     Paragraph 5 of the Supply Agreement describes the performance bonus payments that Fox's Food is obligated to pay to HB3:

PERFORMANCE BONUS PAYMENTS: Annually, for the duration of this Agreement, Licensee [Fox's Food] shall pay Licensor [HB3] a bonus payment ("Performance Bonus") equal to 5% of the gross revenue in excess of $500,000, with a ceiling of $1,000,000, in annual sales generated from the Bexley Store. The first annual payment of the Performance Bonus shall be paid twelve (12) months after the opening of the Bexley Store.  Any payment of this Performance Bonus shall be subordinate to any of Licensee's obligation to make rental payments, tenant improvement payments and any payments due on the Huntington Bank Small Business Loan.  If Licensee cannot immediately make payment of the Performance Bonus, Licensor and Licensee shall work out an agreement to make such payment over the course of an agreed upon period, so as to not harm Licensee's ability to conduct Business.

9.      Fox's Food has accrued Performance Bonuses under the Supply Agreement in the amount of $25,000 per year for years 2017, 2018, 2019, 2020, and 2021.  Fox's Food has not paid those Performance Bonuses to HB3.

10.     Under the Supply Agreement, Fox's Food had an exclusive option to purchase HB3's business for an agreed amount, and upon agreed terms (the "Option").  The Option was open for two years following the effective date of the Supply Agreement (September 28, 2016), during which time Fox's Food could exercise the Option by providing written notice to HB3, along with a proposed asset purchase agreement.  Fox's Food did not, within the two-year period, exercise the Option under the Supply Agreement.

11.     In 2019, Jeremy Fox decided to open another restaurant using the "Block's" name (the "North Market Store") under the same terms as the Bexley Store with respect to the exclusive supply of Products by HB3.  An oral agreement was made, between HB3 and Fox's Food, for Fox's Food to open the North Market Store for a one-time license fee of $25,000.

12.     In March 2020, Fox's Food opened the North Market Store.  Fox's Food has not paid the $25,000 license fee to HB3 in conjunction with the opening of the North Market Store.

13.     In early 2021, Jeremy Fox contacted Sammy's Foods LLC (Sammy's Foods), a direct competitor of HB3 and a company with bagel production capabilities, to negotiate a purchase of Sammy's Foods.

14.     In October 2021, Jeremy Fox formed an Ohio limited liability company called Sammy's Bagels LLC ("Sammy's Bagels").

15.     In March 2022, Jeremy Fox used Sammy's Bagels to purchase Sammy's Foods, which was HB3's direct competitor. Jeremy Fox never told HB3 about his formation of Sammy's Bagels or the acquisition of Sammy's Foods by Sammy's Bagels.

16.     Jeremy Fox performed a cost analysis in which he compared the cost of buying products from Sammy's Bagels, which he owned, with the cost of buying products from HB3. As a result of that cost analysis, Jeremy Fox determined that he could save more than $133,000 per year by having Sammy's Bagels supply his restaurants rather than by having HB3 supply his restaurants.

17.     Jeremy Fox never told anyone at HB3 that Fox's Food was insolvent.   No evidence was presented at the hearing that Fox's Food was insolvent.

18.     On July 13, 2022, Jeremy Fox sent an email to his father, Ronald Fox, and to his business associate Michael Gasbarro, in which Jeremy Fox stated, "OK guys I've had it, I cannot continue my supply agreement with HLB3 [sic] anymore, it's just getting too hard to operate and I'm getting zero communication from their side."  In the email, Jeremy Fox described his plan to change the name of his stores from "Block's Bagels" to "Fox's Bagels" and his plan to start a company called FRG Enterprises, LLC, which he intended to use to buy the assets of Fox's Food, so that he would not be "locked to" the Supply Agreement.  Jeremy Fox stated, "[F]rom

Case 2:23-cv-04210 Doc Clerk of Courts filed 01/05/24 more Entered 2022/06/24 13:58 PM 22 CV 07119 Main
Document    Page 20 of 33

EXHIBIT B
Page 6 of 17

my viewpoint, we should be able to say if we don't call it blocks [*sic*], we don't have to buy from you, simple as that."

19.    In July 2022, Jeremy Fox created FRG Enterprises, LLC ("FRG"), which stands for "Fox Restaurant Group," without telling anyone at HB3.

20.    On September 20, 2022, Fox's Food and FRG entered into an "Asset Purchase Agreement," pursuant to which Fox's Food sold its assets to FRG, with the exception of certain excluded assets, including the Supply Agreement between HB3 and Fox's Food.

21.    In September 2022, MNG Investments, LLC ("MNG") was formed by Michael Gasbarro, its sole owner.

22.    Jeremy Fox owns 75 percent of FRG and MNG owns 25 percent of FRG, subject to Jeremy Fox's managerial power and call option.

23.    The two main purposes for the Asset Purchase Agreement between Fox's Food and FRG were to enable Fox's Food to avoid its liability to HB3 under the Supply Agreement and the oral agreement regarding the North Market Store, and to permit Sammy's Bagels, rather than HB3, to supply Products to Jeremy Fox's restaurants.

24.    On October 2, 2022, Jeremy Fox conducted business as usual as "Block's Bagels."  After he closed the Bexley Store and the North Market Store for the evening, he fired all his employees who had been receiving paychecks from Fox's Food, immediately rehired those same individuals as employees of FRG, changed the signage at the restaurants from "Block's Bagels" to "Fox's Bagel and Deli," put out menus with new designs offering largely the same fare, and began having Sammy's Bagels supply his restaurants.

25.    Jeremy Fox advertises "Fox's Bagel and Deli" as "[f]ormerly known as Block's Bagels" and claims that the stores sell "all of their most popular classic offerings enjoyed for

generations at their Bexley location." Everything in the Bexley Store and the North Market Store, except the store names, has remained the same - the locations, equipment, fixtures, furniture, computers, phones, phone numbers, and employees. Jeremy Fox changed nothing but the signage on the front of the stores and the design/format of the menus.

26. On October 2, 2022, before notifying HB3 of the changes described above, Jeremy Fox posted to a Bexley, Ohio Facebook group that "officially the Blocks Bagels Bexley location and North market location are closed. Both locations will now be Fox's Bagel and Deli."

27. On October 3, 2022, Jeremy Fox reopened the Bexley Store and the North Market Store as "Fox's Bagel and Deli," claiming that FRG was now operating the stores, while serving largely the same fare, served by the same employees, but now procuring Products from Sammy's Bagels instead of HB3.

28. On October 3, 2022 at 8:09 a.m., in an email, Jeremy Fox, through counsel, notified HB3, through counsel, that Fox's Food was "no longer a going concern[,]" that the assets of Fox's Food had been sold, that Fox's Food would no longer be operating any stores, and that the "new ownership group" (FRG) would be operating the Bexley Store and the North Market Store as "Fox's Bagels and Deli" without any affiliation with HB3.

29. Jeremy Fox took the actions described above without communicating any purported pricing issues to HB3, and without attempting to renegotiate the terms of the Supply Agreement. To the contrary, in the spring of 2022, when Jeremy Fox expressed concern to HB3 regarding costs, HB3 recommended a payment plan and asked to see the financial statements of Fox's Food. Jeremy Fox represented to HB3 that he would gather the financial statements of Fox's Food. As late as September 28, 2022, Jeremy Fox, through counsel, represented to HB3 that he was gathering the

requested financial statements of Fox's Food. That representation, however, was made after Fox's

Food had contracted to sell its assets to FRG.

30.     From October 3, 2022 until October 14, 2022, the date on which this Court issued a

temporary restraining order, Sammy's Bagels, and not HB3, supplied the Bexley Store and the

North Market Store with the Products those restaurants used in their daily business.

31.     Jeremy Fox's conduct, as described above, has jeopardized the livelihood of the 34

employees currently working in HB3's production and retail operations, because the current

production operation was built to support two or more Fox's Food locations, which included the

Bexley Store and the North Market Store.  Relying on the representations made by Fox's Food in

the Supply Agreement, HB3 elected not to open a new store in Bexley after HB3 closed the Original

Broad Street Store.

32.     If Fox's Food is permitted to abandon the Supply Agreement and the oral agreement

regarding the North Market Store, HB3 will be compelled to terminate the employment of its 34

employees, will not be able to renew its lease for 2023, will lose approximately $10,000 in revenue

per month, will suffer the loss of 55 years of good will created by Harold Block, and will close its

business within weeks.

33.     On October 12, 2022, HB3 filed a Verified Complaint containing several counts

that are pertinent to HB3's motion for a preliminary injunction.  Count One is a claim against

Fox's Food, FRG, and Jeremy Fox for violation of the Ohio Uniform Fraudulent Transfer Act,

R.C. Chapter 1336.  Count Two is a claim against Fox's Food, FRG, Jeremy Fox, and Ronald

Fox for breach of contract.  Count Five is a claim against Sammy's Bagels and Jeremy Fox for

tortious interference with contract.  Count Eight is a claim against Fox's Food, Jeremy Fox, and

Ronald Fox for a fraudulent transaction resulting in successor liability.

## Conclusions of Law

1.      The purpose of a preliminary injunction is to preserve the status quo pending a resolution of a case on its merits.  *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 10th Dist. Franklin No. 14AP-368, 2014-Ohio-5108, ¶ 18.  A preliminary injunction "is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot."  *Garono v. State*, 37 Ohio St. 3d 171, 173 (1988).

 2.      Revised Code 2727.02 provides:

§ 2727.02 Causes for an injunction.

A temporary order may be granted restraining an act when it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief, or any part of it, consists in restraining the commission or continuance of such act, the commission or continuance of which, during the litigation, would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, threatens or is about to do, or is procuring or permitting to be done, such act in violation of the plaintiff's right respecting the subject of the action, and tending to render the judgment ineffectual.

 3.      The standards by which a trial court must judge a motion for preliminary injunction are well-established.  *Schaller v. Rogers*, 10th Dist. Franklin No. 08AP-591, 2008-Ohio-4464, ¶ 30.  A moving party is entitled to injunctive relief if that party establishes a substantial likelihood of prevailing on the merits, irreparable injury in the absence of injunctive relief, no unjustifiable harm to third parties, and that the injunction will serve the public interest. *Id.*  A party seeking a preliminary injunction has the burden of establishing a right to the preliminary injunction by demonstrating clear and convincing evidence of each of these factors. *Youngstown City School Dist. Bd. of Edn. v. State*, 10th Dist. Franklin No. 15AP-941, 2017-Ohio-555, ¶ 50.  In determining whether to grant injunctive relief, no one of the four preliminary injunction factors is dispositive; rather, a balancing should be applied.  *Id.*

Case 2:23-cv-04219 Doc #: 47 Filed: 01/05/24 Entered: 01/05/24 13:58:22 Page 24 of 33 Clerk of Courts Common Pleas 2022 CV 07119 Montgomery County

Document     Page 24 of 33

EXHIBIT B
Page 10 of 17

4.      HB3 has established a substantial likelihood that it will prevail on the merits of

Count One of the Complaint, which is a claim against Fox's Food, FRG, and Jeremy Fox for

violation of the Ohio Uniform Fraudulent Transfer Act, R.C. Chapter 1336.

5.      The Ohio Uniform Fraudulent Transfer Act, specifically, R.C. 1336.04, provides:

§ 1336.04 When transfer or obligation incurred is fraudulent as to a creditor.

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a
creditor, whether the claim of the creditor arose before, or within a reasonable
time not to exceed four years after, the transfer was made or the obligation was
incurred, if the debtor made the transfer or incurred the obligation in either of the
following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the
debtor[.]

***

(B) In determining actual intent under division (A)(1) of this section,
consideration may be given to all relevant factors, including, but not limited to,
the following:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property
transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred,
the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was
reasonably equivalent to the value of the asset transferred or the amount of
the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

6.      Proof of actual intent to defraud, hinder, or delay any creditor is often difficult to procure. *UAP-Columbus JV326132 v. Young*, 10th Dist. Franklin No. 09AP-646, 2010-Ohio-485, ¶ 29.   As a result, courts look to inferences from the circumstances surrounding the transaction and the relationship of the parties. *Id.* A creditor may establish a debtor's fraudulent intent if the circumstances demonstrate various "badges of fraud," which are statutorily defined in R.C. 1336.04(B). *Id.* A party need not demonstrate all of the statutorily defined badges of fraud; as few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent. *Id.*

7.      In creating FRG and transferring the assets of Fox's Food to FRG, Jeremy Fox intended to avoid Fox's Food's obligations to HB3 under the Supply Agreement.  Accordingly, there is proof of actual intent to defraud HB3 under R.C. 1336.04(A)(1).

8.      In addition, HB3 has established five of the "badges of fraud" set forth in R.C. 1336.04(B).  HB3 has established that the transfer of the assets was to an insider, that the debtor retained possession or control of the property transferred after the transfer, that the transfer of the assets was concealed, that the transfer was of substantially all of the assets of the debtor, and that the debtor became insolvent shortly after the transfer of the assets was made.

9.      HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count One of the Complaint.

10.    HB3 has established a substantial likelihood that it will prevail on the merits of Count Two of the Complaint, which is a claim against Fox's Food, FRG, Jeremy Fox, and Ronald Fox for breach of contract.

11.    The elements of a claim for breach of contract are the existence of a contract, performance by the plaintiff, non-performance by the defendant, and damage or loss to the plaintiff. *Smith v. McDiarmid*, 10th Dist. Franklin No. 21AP-199, 2022-Ohio-2151, ¶ 30. HB3 has established the existence of the written Supply Agreement and the oral agreement regarding the North Market Store, HB3's performance of its obligations under both agreements, Fox's Food's non-performance of its obligations under both agreements, and damage to HB3 proximately caused by Fox's Food's breaches of both agreements.

12.    HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Two of the Complaint.

13.    HB3 has established a substantial likelihood that it will prevail on the merits of Count Five of the Complaint, which is a claim against Sammy's Bagels and Jeremy Fox for tortious interference with contract.

14.    A claim of tortious interference with a contract requires proof of five elements: the existence of a contract; the wrongdoer's knowledge of the contract; the wrongdoer's intentional procurement of the contract's breach; the lack of justification; and resulting damages. *Gambrel v. Ohio Dept. of Aging*, 10th Dist. Franklin No. 14AP-940, 2015-Ohio-2543, ¶ 11.

15.    HB3 has established the existence of the written Supply Agreement and the oral agreement regarding the North Market Store, Sammy's Bagels' (through Jeremy Fox) and Jeremy Fox's knowledge of both agreements, their intentional procurement of the breaches of both agreements, the lack of justification for the breaches, and resulting damages to HB3.

16.     HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Five of the Complaint.

17.     HB3 has established a substantial likelihood that it will prevail on the merits of Count Eight of the Complaint, which is a claim against Fox's Food, Jeremy Fox, and Ronald Fox for a fraudulent transaction resulting in successor liability.

18.     As a general rule, a successor corporation is not liable for the debts and liabilities of the former entity. *Erdy v. Columbus Paraprofessional Inst.*, 74 Ohio App. 3d 462, 464 (10th Dist. Franklin 1991).     However, four exceptions are recognized to the general rule of nonliability: (1) the buyer expressly or impliedly agreed to assume such liability; (2) the transaction amounts to a *de facto* consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability. *Id.*

19.     HB3 has established a substantial likelihood that it will prevail on the merits of its claim that the Asset Purchase Agreement between Fox's Food and FRG was entered into fraudulently for the purpose of Fox's Food escaping liability to HB3 under the written Supply Agreement and the oral agreement regarding the North Market Store, and that HRG is therefore liable for the debts and liabilities of Fox's Food arising under both agreements.

20.     HB3 has therefore established a substantial likelihood that it will prevail on the merits of Count Eight of the Complaint.

21.     Irreparable injury or harm, which must be shown for injunctive relief, is defined as an injury for the redress of which, after its occurrence, there could be no plain, adequate, and complete remedy at law, and for which restitution in money would be impossible, difficult, or incomplete. *Dimension Serv. Corp. v. First Colonial Ins. Co.*, 2014-Ohio-5108, ¶ 12.  In Ohio,

courts of equity are insistent that the legal remedy shall be in all respects adequate to justify the refusal of the injunction upon that ground. *Mid-American Tire, Inc. v. PTZ Trading Ltd.*, 95 Ohio St. 3d 367, 2002-Ohio-2427, ¶ 81. In order to be considered adequate, the legal remedy must be of such a nature that full indemnity may be recovered without a multiplicity of suits. *Id.* It is not enough that there is a remedy at law; it must be plain, adequate, and complete, or in other words, as practical, and as efficient to the ends of justice and its prompt administration, as the remedy in equity. *Id.* Thus, in determining the propriety of injunctive relief, adequate remedy at law means that the legal remedy must be as efficient as the indicated equitable remedy would be, that such legal remedy must be presently available in a single action, and that such remedy must be certain and complete. *Id.*

22.     If the Court does not preliminarily enjoin Fox's Food, FRG, and Jeremy Fox from abandoning the written Supply Agreement and the oral agreement regarding the North Market Store, HB3 will be compelled, among other consequences, to discharge its 34 employees and to close its business within weeks. HB3 has therefore established that it will sustain irreparable injury if a preliminary injunction is not granted.

23.     There is no evidence that any third parties will be unjustifiably harmed if the Court grants HB3's motion for a preliminary injunction.

24.     The requested preliminary injunction will serve the public interest. "Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Mike McGarry & Sons, Inc. v. Gross*, 8th Dist. Cuyahoga No. 86603, 2006-Ohio-1759, ¶ 24. "[T]here is a benefit to enforcement of contractual relations." *Escape Enterprises, Ltd. v. Gosh Enterprises, Inc.*, 10th Dist. Franklin Nos. 04AP-834 and 04AP-857, 2005-Ohio-2637, ¶ 47.

Case No. 22CV-07119                                                        14

## Decision

"Injunction is an extraordinary remedy equitable in nature, and its issuance may not be demanded as a matter of strict right; the allowance of an injunction rests in the sound discretion of the court and depends on the facts and circumstances surrounding the particular case[.]" *Perkins v. Village of Quaker City*, 165 Ohio St. 120, syllabus (1956). Considering the facts and circumstances surrounding this case, the Magistrate concludes that Plaintiff has proved that it is entitled to a preliminary injunction against Defendants. Accordingly, it is the Magistrate's decision that Plaintiff's October 13, 2022 motion for a preliminary injunction against Defendants be **GRANTED,** specifically:

> Defendants Fox's Food LLC, FRG Enterprises, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from abandoning and/or breaching the "License and Supply Agreement" executed by Plaintiff, HB3, LLC, and Fox's Food LLC on September 28, 2016 and the oral agreement regarding the North Market Store;

> Defendants Sammy's Bagels, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from tortiously interfering with the "License and Supply Agreement" executed by Plaintiff, HB3, LLC, and Fox's Food LLC on September 28, 2016 and the oral agreement regarding the North Market Store; and

> Defendants Fox's Food LLC, FRG Enterprises, LLC, Jeremy Fox, and all those acting in active concert or participation with those parties, are preliminarily enjoined from further fraudulently dissipating the assets of Fox's Food LLC.

> **A PARTY SHALL NOT ASSIGN AS ERROR ON APPEAL THE COURT'S ADOPTION OF ANY FACTUAL FINDING OR LEGAL CONCLUSION IN THE FOREGOING MAGISTRATE'S DECISION, WHETHER OR NOT SPECIFICALLY DESIGNATED AS A FINDING OF FACT OR CONCLUSION OF LAW UNDER CIV. R. 53(D)(3)(a)(ii), UNLESS THE PARTY TIMELY AND SPECIFICALLY OBJECTS TO THAT FACTUAL FINDING OR LEGAL CONCLUSION AS REQUIRED BY CIV. R. 53(D)(3)(b).**

Copies electronically transmitted to all parties and counsel of record.

Case 2:23-cv-04218-EAS-KAJ   Doc #: 47   Filed: 01/05/24   Page: 30 of 33   PAGEID #: 997
Franklin County Ohio Clerk of Courts of the Common Pleas- 2022 Nov 14 2:58 PM-22CV07119
Document       Page 30 of 33

**ORDER TO THE FRANKLIN COUNTY CLERK OF COURTS:** Please serve this Magistrate's Decision on the following individuals by ordinary U.S. mail:

James E. Arnold, Esq.
Michael L. Dillard, Jr., Esq.
115 W. Main St.
Ste. 400
Columbus, OH 43215

Andrew C. Clark, Esq.
John P. Miller, Esq.
Colleen R. Vance, Esq.
35 N. 4th St.
Ste. 100
Columbus, OH 43215-2511

Franklin County Court of Common Pleas

**Date:**               11-22-2022

**Case Title:**         HB3 LLC -VS- FOXS FOOD LLC ET AL

**Case Number:**        22CV007119

**Type:**               MAGISTRATE DECISION

So Ordered

/s/ Magistrate Pamela Broer Browning

Electronically signed on 2022-Nov-22     page 17 of 17

## NOTICE OF MOTION OF HB3, LLC, FOR RELIEF FROM AUTOMATIC STAY RELATED TO NON-DEBTOR CLAIMS

Creditor HB3, LLC, has filed papers with the Court seeking an order clarifying that the automatic stay does not apply to state court litigation pending against various non-debtor individuals and entities identified in the motion, or lifting the stay to allow that litigation to proceed.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the Motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the Motion**, you must file with the court a response explaining your position by mailing your response by regular U.S. Mail to Clerk, United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, OR your attorney must file a response using the court's ECF system.

The court must **receive** your response on or before the date set forth above.

You must also send a copy of your response either by 1) the court's ECF System, or by 2) regular U.S. Mail to:

United States Trustee                     James A. Coutinho, Esq.
170 North High Street, Suite 200          Allen Stovall Neuman & Ashton LLP
Columbus, Ohio 43215                      10 W. Broad St., Ste. 2400
                                          Columbus, OH 43215

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further notice or hearing.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the *Motion of HB3, LLC, for Relief From Automatic Stay Related to Non-Debtor Claims* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) by ordinary U.S. Mail on January 5, 2024, addressed to all creditors and parties in interest as set forth on the attached mailing matrix, and the following:

Fox's Food, LLC
165 North Merkle Road
Columbus, Ohio 43209

Sammy's Bagels, LLC
c/o OLR Agency, Inc.
35 North Fourth Street, Suite 100
Columbus, OH 43215

Jeremy Fox
165 North Merkle Road
Columbus, Ohio 43209

Ronald Fox
165 North Merkle Road
Columbus, Ohio 43209

Michael N. Gasbarro
26911 Wedgewood Drive, Unit 201
Bonita Springs, FL 34134-2613

The Michael N. Gasbarro Trust
26911 Wedgewood Drive, Unit 201
Bonita Springs, FL 34134-2613

MNG Investments, LLC
26911 Wedgewood Drive, Unit 201
Bonita Springs, FL 34134-2613

Heirloom, LLC
c/o OLR Biz Agency, Inc., Statutory Agent
35 N. 4th Street
Columbus, OH 43215

/s/ James A. Coutinho
James A. Coutinho      (0082430)

14