## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No: 23-54240 |
| | ) | |
| FRG Enterprises, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Hoffman |
| | ) | |

## NOTICE OF FILING OF AMENDED PLAN OF REORGANIZATION
## OF FRG ENTERPRISES, LLC

Attached hereto as <u>Exhibit A</u> is the Amended Plan of Reorganization of FRG Enterprises,

LLC ("Amended Plan").  Attached hereto as <u>Exhibit B</u> is a redlined version of the Amended Plan

indicating the changes between the Plan of Reorganization of FRG Enterprises, LLC (Doc. 81)

and the Amended Plan of Reorganization of FRG Enterprises, LLC.

Respectfully submitted,

*/s/ Matthew T. Schaeffer*
Matthew T. Schaeffer, Esq.    (0066750)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
P: 614-229-3289 / F: 614-221-0479
E-Mail:  mschaeffer@baileycav.com
*Attorneys for Debtor FRG Enterprises, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the *Notice of Filing of Amended Plan of Reorganization of FRG Enterprises, LLC* was served on the date of filing (1) electronically through the Court's ECF system on all ECF participants registered in the case at the email address registered with the Court and (2) via first class, U.S. Mail upon the attached mailing matrix which includes the Debtor.

/s/  *Matthew T. Schaeffer*
Matthew T. Schaeffer (0066750 )

4892-1240-1320v1

Label Matrix for local noticing
0648-2
Case 2:23-bk-54240
Southern District of Ohio
Columbus
Mon Dec 30 14:23:08 EST 2024

(p)AMERICAN ELECTRIC POWER
ATTN JASON E REID
1 RIVERSIDE PLAZA 13TH FLOOR
COLUMBUS OH 43215-2373

AT&T
4331 Communications Dr., Floor 4W
Dallas, TX 75211-1300

Apollo Alarm
3942 E. Main Street
Columbus, OH 43213-2949

Aramark/Vestis
1900 Progress Avenue
Columbus, OH 43207-1727

Pamela Arndt
DOJ-Ust
170 North High Street
Suite 200
Columbus, OH 43215-2417

Arnold & Clifford LLP
115 West Main Street, Suite 400
Columbus, OH 43215-5099

Rick L. Ashton
Allen Stovall Neuman & Ashton LLP
10 West Broad Street
Suite 2400
Columbus, OH 43215-3469

Asst US Trustee (Col)
Office of the US Trustee
170 North High Street
Suite 200
Columbus, OH 43215-2417

Bexley Centre
3016 Maryland Avenue
Columbus, OH 43209-1590

John C Cannizzaro
Ice Miller LLP
250 West Street
Suite 700
Columbus, OH 43215-7509

City of Columbus Tax
77 North Front Street
Columbus, OH 43215-1895

Andrew C. Clark
Onda LaBuhn Ernsberger & Boggs Co., L.P.
35 North Fourth Street
Suite 100
Columbus, OH 43215-0267

(p)COLUMBIA GAS
290 W NATIONWIDE BLVD 5TH FL
BANKRUPTCY DEPARTMENT
COLUMBUS OH 43215-4157

James A Coutinho
Allen Stovall Neuman & Ashton LLP
10 West Broad Street
Suite 2400
Columbus, OH 43215-3469

Michael Lee Dillard Jr
Arnold Clifford LLP
115 West Main Street 4th Floor
43215
Columbus, OH 43215-5099

Erie Insurance Group
445 Hutchinson Avenue, Suite 305
Columbus, OH 43235-5677

Experience Columbus
277 W. Nationwide Blvd., Suite 125
Columbus, OH 43215-7501

FRG Enterprises, LLC
165 North Merkle Road
Columbus, OH 43209-1555

G&J Pepsi-Cola Bottlers Inc.
1241 Gibbard Avenue
Columbus, OH 43219-2438

Brian M Gianangeli
The Law Office of Charles Mifsud, LLC
6305 Emerald Parkway
Dublin, OH 43016-3241

Gordon Food Service Inc
Ice Miller LLP
Attn: John C Cannizzaro
250 West Street Suite 700
Columbus OH 43215-7509

HB3 LLC
6115 McNaughten Center
Columbus, OH 43232-1641

HB3 LLC dba Block's Bagels
6115 McNaughten Center
Columbus, OH 43232-1641

HB3, LLC
c/o James A. Coutinho, Esq.
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215-3469

HB3, LLC
James A. Coutinho, Esq.
10 W. Broad St., Ste. 2400
Columbus, OH 43215-3469

Happy Chicken Farms & Merry Milk Maid
2680 Lewis Centre Way
Grove City, OH 43123-1770

Hillcrest Food Service
2735 East 40th Street
Cleveland, OH 44115-3510

Hobart Service
701 South Ridge Avenue
Troy, OH 45373-5501

Keurig Dr. Pepper-7UP
53 South Avenue
Burlington, MA 01803-4903

Koorsen Fire
2719 N. Arlington Avenue
Indianapolis, IN 46218-3300

Leticia Escobar
5750 Alfie Place
Columbus, OH 43213-3505

Samantha Lewis
Onda LaBuhn Ernsberger & Boggs Co., LPA
35 North Fourth Street, Suite 100
Ste 200
43215
Columbus, OH 43215-0267

MWG Investments, LLC
c/o Onda LaBuhn
35 North Fourth Street
Suite 100
Columbus, OH 43215-0267

Donald W. Mallory
Wood & Lamping
600 Vine Street
Suite 2500
Cincinnati, OH 45202-2491

Mid-America Associates
560 Kirts Blvd.
Troy, MI 48084-4141

North Market
59 Spruce Street
Columbus, OH 43215-1622

(p)OHIO ATTORNEY GENERAL
COLLECTIONS ENFORCEMENT ATTN BANKRUPTCY MANAGER
30 E BROAD ST
14TH FLOOR
COLUMBUS OH 43215-3414

(p)OHIO BUREAU OF WORKERS' COMPENSATION
PO BOX 15567
COLUMBUS OH 43215-0567

Ohio Department of Job & Family Services
Attn: Legal Support - Bankruptcy
P.O. Box 182830
Columbus, OH 43218-2830

Ohio Department of Taxation
P.O. Box 2678
Columbus, OH 43216-2678

Ohio Department of Taxation, Bankruptcy Div
P.O. Box 530
Columbus, OH 43216-0530

Ohio Restaurant Association
150 East Campus View Blvd., Suite 150
Columbus, OH 43235-6608

Onda, Labuhn, Ernsberger & Boggs
35 N. Fourth Street, Suite 100
Columbus, OH 43215-0267

Oracle America, Inc.
Buchalter, a Professional Corporation
c/o Shawn M. Christianson, Esq.
425 Market St., Suite 2900
San Francisco, CA 94105-2491

Oracle America, Inc. SII to NetSuite, Inc.
c/o Shawn M. Christianson, Esq.
Buchalter PC
425 Market St., Suite 2900
San Francisco, CA 94105-2491

Oracle, Inc.
2300 Cloud Way
Austin, TX 78741

Joseph L Piccin
3010 Hayden Road
Columbus, OH 43235-7243

Plaza Properties/Bexley Centre
3016 Maryland Avenue
Columbus, OH 43209-1591

Andrew Dennis Rebholz
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215-3469

San Filipo Produce
4561 E. 5th Avenue, #3
Columbus, OH 43219-1896

Sanfillipo Produce Co., Inc.
4561 E. Fifth Ave.
Columbus, OH 43219-1896

Sanfillipo Produce Co., Inc.
Joseph L Piccin Esq.
3010 Hayden Rd
Columbus, OH 43235-7243

Matthew T Schaeffer
10 West Broad St
Suite 2100
Columbus, OH 43215-3455

Spectrum Time Warner
Legal Response Ops. Center
12405 Powerscourt Drive
Saint Louis, MO 63131-3673

Storad Labels
126 Blaine Avenue
Marion, OH 43302-3612

Taylor Crossing Business Park LLC
c/o Capital City Brokerage Group LLC
240 Outerbelt Street, Unit #3
Columbus, OH 43213-1589

Toast POS
401 Park Drive, Ste. 801
Boston, MA 02215-3372

United Health Care
9900 Bren Road East
Minnetonka, MN 55343-9603

Verizon Wireless
Bankruptcy Admin. Dept.
500 Technology Drive, Suite 500
Saint Charles, MO 63304-2225

Vestis Services, LLC fka ARAMARK Uniform & C
c/o Sheila R. Schwager
Hawley Troxell Ennis & Hawley LLP
P.O. Box 1617
Boise, ID 83701-1617

Wells Fargo - Oracle Financing
600 South 4th Street, 10th Floor
Minneapolis, MN 55415-1526

Zilka & Co.
720 Ligonier Drive
Bunker, PA 15639

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

AEP Ohio
1 Riverside Plaza
Columbus, OH 43215

Columbia Gas of Ohio
Revenue Recovery
PO Box 117
Columbus, OH 43216-0117

Ohio Attorney General, Collections
Enforcement Section Attn Bankruptcy Unit
30 E. Broad Street, 14th Floor
Columbus, OH 43215

Ohio Bureau of Workers Compensation
30 W. Spring Street
Columbus, OH 43215

(d)Ohio Bureau of Workers' Compensation
PO Box 15567
Columbus, Ohio 43215-0567

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Jeremy Fox

(u)Michael Gasbarro

(u)Gordon Food Service, Inc

(u)MNG Investments, LLC

(d)MNG Investments, LLC
c/o Onda LaBuhn
35 North Fourth Street, Suite 100
Columbus OH 43215-0267

(u)Ohio Department of Taxation

End of Label Matrix
Mailable recipients     62
Bypassed recipients      6
Total                   68

4892-1240-1320v1

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No: 23-54240 |
| | ) | |
| FRG Enterprises, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Hoffman |
| | ) | |

---

### AMENDED PLAN OF REORGANIZATION

OF

FRG ENTERPRISES, LLC

---

Dated: December 30, 2024

Respectfully submitted,


/s/ Matthew T. Schaeffer
Matthew T. Schaeffer, Esq.    (0066750)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
P: 614-229-3289 / F: 614-221-0479
E-Mail:  mschaeffer@baileycav.com

*Counsel for Debtor and Debtor-In-Possession
FRG Enterprises, LLC*

# TABLE OF CONTENTS

UNITED STATES BANKRUPTCY COURT ........................................................................... 1

SOUTHERN DISTRICT OF OHIO ...................................................................................... 1

EASTERN DIVISION ....................................................................................................... 1

I.   INTRODUCTION ................................................................................................. 4

  A.   Explanation of Chapter 11 ............................................................................. 4

  B.   Explanation of the process of Confirmation ................................................... 4

  C.   Voting Procedures ......................................................................................... 4

  D.   Best Interests of Creditors Test ..................................................................... 4

II.   DEFINITIONS ..................................................................................................... 5

III.   REPRESENTATIONS .......................................................................................... 8

IV.   HISTORY ........................................................................................................... 9

  A.   Events Leading to the Commencement of the Bankruptcy Case .................... 10

  B.   Risks and Benefits Related to the Reorganized Debtor .................................. 11

  C.   Ongoing Operations ....................................................................................... 11

V.   LIQUIDATION ANALYSIS ................................................................................. 11

VI.   PLAN PAYMENT AND COMMITMENT PERIOD ................................................ 12

VII.   PROJECTIONS .................................................................................................... 13

VIII.   CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS . 13

  A.   Class 1: Administrative Claims under 11 USC 507(a) ................................... 14

  B.   Class 2: Priority Tax Claims ......................................................................... 14

  C.   Class 3: MNG Secured Claim ........................................................................ 15

  D.   Class 4: General Unsecured Creditors with Allowed Claims .......................... 15

  E.   Class 5: The HB3 General Unsecured Claim ................................................. 16

  F.   Class 6: Equity .............................................................................................. 16

IX.   IMPLEMENTATION OF THE PLAN ................................................................... 17

  A.   Operations of the Reorganized Debtor ........................................................... 17

  B.   Vesting of Assets in Reorganized Debtor in a Consensual Plan ..................... 17

  C.   Vesting of Assets in Reorganized Debtor in a Non-Consensual Plan .............. 17

X.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................... 17

XI.   PROVISIONS GOVERNING DISTRIBUTIONS ................................................... 18

  A.   Delivery of Distributions ............................................................................... 18

  B.   Undeliverable Distributions ........................................................................... 18

XII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN .................. 19

2

XIII.    RETENTION OF JURISDICTION ................................................................. 19

A.    Continuing Jurisdiction of the Bankruptcy Court .......................................... 19

B.    District Court Jurisdiction ............................................................................ 20

XIV.    SPECIAL PROVISIONS ........................................................................... 20

A.    Fees of Professionals................................................................................... 20

B.    Exculpation and Limitation of Liability ....................................................... 20

C.    Subchapter V Trustee Disclosures and Fees ................................................. 21

D.    Bar Date for all Administrative Expense Claims............................................ 21

E.    Suspension of Payments .............................................................................. 21

F.    Discharge Provisions ................................................................................... 21

G.    Protection of Creditors under Section 1191(c) if Payments are not made under the Plan or any Amended Plan ............................................................................................ 21

H.    Treatment of Allowed Secured Claims ......................................................... 22

I.    Interest Rate ................................................................................................ 22

J.    Set Offs ...................................................................................................... 22

K.    Manner of Payments ................................................................................... 22

L.    Time Bar to Cash Payments ........................................................................ 22

M.    Payments and Distributions on Disputed Claims........................................... 22

N.    Approval of Executory Contract Rejection and Assumption .......................... 23

O.    Post-Filing Date Contracts and Leases ......................................................... 23

P.    Notice of Default......................................................................................... 23

XV.    DISCHARGE OF ALL CLAIMS AND RELEASES ...................................... 23

A.    Discharge pursuant to Section 1141(a) ......................................................... 23

B.    Discharge pursuant to Section 1192 ............................................................. 23

XVI.    Miscellaneous Provisions ......................................................................... 24

A.    Successors and Assigns................................................................................ 24

B.    Binding Effect ............................................................................................ 24

C.    Modification of Payment Terms ................................................................... 24

D.    Valuation .................................................................................................... 24

Any claim for fees, costs, or other charges shall be made by the creditor by application to the Court. Such fees, costs or charges must be reasonable as required by Section 506(6) of the Bankruptcy Code. .............................................................................................................. 24

E.    Default and Waiver ..................................................................................... 24

F.    Substitution of Collateral ............................................................................ 25

G.    Termination of Subchapter V Trustee........................................................... 25

H.    Tax Consequences ........................................................................................ 25

I.    Risk to Creditors Under the Debtor's Plan ................................................... 25

FRG Enterprises, LLC, Debtor and Debtor in Possession (the "Debtor"), hereby submits this Chapter 11 Subchapter V Plan pursuant to Section 1121(a) of the Bankruptcy Code and requests confirmation of the Plan pursuant to Section 1129 and Section 1191 of the Bankruptcy Code. All holders of Claims and Interests entitled to vote to accept or reject the Plan should read the Plan in its entirety before voting to accept or reject the Plan.

# I.    **INTRODUCTION**

Debtor filed its voluntary Chapter 11 case in the Bankruptcy Court on March 6, 2023.  The Debtor operates two food service establishments under the name of "Fox's Bagel and Deli."  The Debtor's main restaurant is in the Bexley area, and it has a location in the North Market in Columbus.

## A.    **Explanation of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. There are different types of Chapter 11 designations. In this case, Debtor has chosen to proceed under a Subchapter V ("Subchapter V"), which was established to benefit small businesses, their creditors and their equity interest holders.  Under Chapter 11, a debtor typically files a plan of reorganization which sets forth the means for addressing the claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## B.    **Explanation of the Process of Confirmation**

Although creditors and interests may vote to accept or reject a proposed plan, Subchapter V of Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan for it to be confirmed by the Court.  Generally, the court will hear the objections of any parties-in-interest and hold a hearing to determine whether a proposed plan conforms to the requirements of Chapter 11.

## C.    **Voting Procedures**

Debtor is seeking a consensual plan of reorganization, which requires that no creditors vote to reject the plan.  Otherwise, the Debtor will seek to confirm the Plan on a non-consensual basis under Section 1191(B).  Each holder of an Allowed Claim may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing such ballot.

## D.    **Best Interests of Creditors Test**

Section 1129(a)(8) of the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property

of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's general unsecured creditors would not be paid any portion of the debt that is owed to them. Because the Plan proposes a distribution to general unsecured creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section l129(a)(7).

## II.    **DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.       "Administrative Expense" shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including professional services.

2.       "Allowed" shall mean, with respect to (a) any Claim, (i) a Claim, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or (ii) a Claim that has been or hereafter is scheduled by the Debtor as liquidated in amount or not disputed or contingent and, is scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, (b) a Claim as to which no objections to the allowance thereof has been filed

3.       "Bankruptcy Case" shall mean the bankruptcy case commenced in the Bankruptcy Court by the debtor under Case No. 23-54240 currently pending in the United States Bankruptcy Court, Southern District of Ohio.

4.       "Bankruptcy Code" or "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

5.       "Allowed Claim" shall mean any claim against the Debtor filed before the claims bar date set by the Bankruptcy Court or is scheduled by the Debtor as liquidated or not disputed or contingent as to which no objections to allowance thereof has been filed or, if any objection is filed, such objection has been determined.

"Allowed HB3 Claim" shall mean the claim of HB3, LLC as agreed upon by the Debtor and HB3 pursuant to a certain settlement agreement which is the subject of the *Debtor's Amended 9019*

5

*Motion for Authority to Compromise the HB3 LLC Litigation and Related Matters* (Doc. 110).

6.        "Bankruptcy Court" shall mean the court in the Southern District of Ohio conferred with authority over the Bankruptcy Case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

7.        "Bankruptcy Rules" shall mean the Bankruptcy Rules as in effect on the filing date, together with local rules adopted by the Bankruptcy Court, or such similar rules as may be in effect from time to time in the Bankruptcy Court.

8.        "Cash" shall mean cash, cash equivalents, or other readily marketable securities or instruments.

9.        "Claim" means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10.        "Claimant" means the holder of a Claim or Interest.

11.        "Class" means all the holders of Claims or Interests with respect to the Debtor as designed in a class in this Plan.

12.        "Confirmation Date" means the date of entry by the Bankruptcy Court of an Order confirming the Plan of Reorganization in accordance with the Code.

13.        "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Court.

14.        "Consensual Discharge Order" shall mean an Order of the Bankruptcy Court discharging the debtor pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent provided in and permitted by Section 1141(d) of the Bankruptcy Code, of any and all debts, claims and liens that arose at any time on the debtor, its assets, or properties, which debts, claims and liens arose at any time before the entry of the Confirmation Order, any debt of a kind specified in Sections 502(g), 502(h) or 502 (i) of the Bankruptcy Code, whether or not:

        a.        A proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

        b.        A Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

        c.        The holder of a Claim based upon such debt has accepted the Plan.

6

15.        "Disputed Assets" means the assets in which HB3 claims an interest.  These assets include (1) a bread slicer; (2) stainless steel worktable on casters w/ can opener; (3) sink, three bowl, stainless steel; (4) rotating oven, 5 rack; (5) boiler; (6) stainless steel worktable; (7) bagel racks; and (7) any other equipment referenced in the proof of claim filed by HB3.

16.        "Distribution Agent" shall mean the reorganized debtor if the Plan is consensual or the Subchapter V Trustee if the Plan is non-consensual.

17.        "Effective Date" shall mean the first day after the first full month after entry of the Confirmation Order, whichever is later.  The Debtor shall file a notice of the Effective Date following confirmation of the Plan.

18.        "FRG" and "Debtor" shall mean FRG Enterprises, LLC.

19.        "Impaired" shall mean, with respect to any Claim or class of claims, the condition or effects described in Section 1124 of the Bankruptcy Code.

20.        "Interest" means (i) the ownership interests in the Debtor and (ii) any right or option, however arising, to acquire an ownership interest or any other equity interest in the Debtor.

21.        "Non-Consensual Discharge Order" shall mean an Order of the Bankruptcy Court pursuant to Section 1192 of the Bankruptcy Code, discharging the Debtor of any and all debts, claims and liens that arose at any time on the Debtor, its assets, or properties, which debts, claims and liens arose at any time before the entry of the Confirmation Order that are provided in Section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of this title and provided for in the Plan, except:

        a.        on which the last payment is due after the 3 to 5 years as fixed by the Court; or

        b.        of the kind specified in Section 523(a) of this title.

22.        "Petition Date" shall mean December 6, 2023.

23.        "Plan" shall mean the Debtor's Plan of Reorganization filed by the Debtor together with the exhibits which may be amended from time to time.

24.        "Priority Tax Claim" means all Claims for Taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

25.        "Reorganized Debtor" shall mean the Debtor from and after the Effective Date.

26.        "Retained Property" shall mean (i) all property of the Estate, and (ii) the Exempt Property which was not subject to administration but was retained by Debtor/reorganized Debtor.

27.        "Secured" shall mean, with respect to any Claims, a Claim secured by a valid and

unavoidable lien on or security interest in property of the Debtor, to the extent of the value of such lien or security interest in accordance with Section 506(a) of the Bankruptcy Code, including, if such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

28.        "State Court" shall mean the Franklin County Court of Common Pleas.

29.        "Subchapter V Trustee" means Donald Mallory or any other individual appointed as trustee under Section 1183 of the Bankruptcy Code.

30.        "Substantial Consummation" shall occur when (i) substantially all of the property to be transferred under the Plan has been transferred; (ii) the debtor or its successor has assumed the business or management of substantially all of the property dealt with by the Plan; and (iii) distributions under the Plan have commenced. The Debtor shall file a notice of Substantial Consummation within 14 days of the date of Substantial Consummation.

31.        "Supply Agreement" means the License and Supply Agreement between Fox's Food LLC and HB3, LLC.

32.        "Tax" means and includes any federal, state, county, and local income, ad valorem, excise stamp and other tax of any type or nature whatsoever.

33.        "Tax Claim" means all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to Section 507(a)(8) of the Bankruptcy Code; or (ii) secured by valid liens on the property of the Bankruptcy Estate existing on the Confirmation Date.

34.        "Term" shall mean five years beginning with the Effective Date of the Plan.

35.        "Unsecured" shall mean, with respect to any Claim, a Claim to the extent of thethree yea amount of such Claim that (a) is not secured by any valid and unavoidable lien or security interest in property of the Debtor or (b) is greater than the value and unavoidable lien or security interest in property of the Debtor which secures such Claim.

## III.    **REPRESENTATIONS**

NO REPRESENTATIONS CONCERNING DEBTOR IS AUTHORIZED BY DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

8

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE OHIO DEPARTMENT OF COMMERCE DIVISION OF SECURITIES, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN.   ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.   FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY, ULTIMATELY, TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

IV.   **HISTORY**

The Debtor is an Ohio limited liability company created in July of 2022. Since October of 2022, the Debtor has operated "Fox's Bagel and Deli" in the Bexley area and in the North Market.  It specializes in bagels and deli sandwiches.  The Bexley location is open every day, and offers breakfast and lunch, bagels, deli sandwiches, deli meats, salads, sides, and desserts.  The North Market location is a stall in the North Market, offering a variety of bagels, sandwiches, salads, and sides.

The Debtor is owned by Jeremy Fox (owning 75%) and MNG Investments LLC (owning 25%)("MNG").  It has approximately 24 employees.

To begin operations, the Debtor borrowed funds from MNG and purchased substantially all of the assets (the "Asset Purchase") of Fox's Food, LLC, a company that is owned by Mr. Fox and which operated Block's Bagels in the locations now occupied by Fox's Bagel and Deli.  The Asset Purchase was based upon an appraisal of the assets, with the funds going directly to Fox Foods, LLC's secured lender, the Huntington National Bank.  MNG took a lien in the purchased assets

which was properly perfected under Ohio law.  As part of the Asset Purchase, the Debtor also assumed Fox's Food, LLC's leases in Bexley and in the North Market.

### A.    Events Prior to and During the Bankruptcy Case

Following the Asset Purchase, the Debtor was sued (the "HB3 Litigation") by HB3, LLC ("HB3," a supplier of Block's bagels to Fox's Food, LLC), alleging that (i) FRG received a fraudulent transfer from Fox's Food LLC, (ii) FRG is a successor to Fox's Food, LLC's under a supply agreement with an initial term of ten years from September 28, 2016 (the "Supply Agreement") as a "mere continuation" of Fox's Food, LLC or otherwise; and (iii) FRG is required to honor the Supply Agreement.  The claims primarily alleged that HB3 was harmed by the termination of the License and Supply Agreement and the claims centered on fraudulent transfer, successor liability, tortious interference, breach of contract, and fraud theories relating to the asset purchase.  FRG believes that the claims are specious because the asserts transferred under the Asset Purchase were almost fully encumbered by the Huntington National Bank and therefore do not qualify as a "transfer" under the Ohio Uniform Fraudulent Transfer Act.  Moreover, FRG paid reasonably equivalent value for the assets for the assets under the Asset Purchase.  Finally, HB3 has no damages as result of the Asset Purchase because Fox's Food LLC was not a viable business and would have ceased operations regardless of whether the Asset Purchase was consummated.  HB3 also named Fox's Food LLC, Ronald Fox, Jeremy Fox, Sammy's Bagels, LLC, Michael N. Gasbarro, the Michael N. Gasbarro Trust, MNG, and Heirloom LLC as additional defendants (the "Non-Debtor Defendants").  Prior to the Asset Purchase, Fox's Foods LLC attempted to resolve its differences with HB3, but HB3's demands left Fox's Foods LLC with no alternative but to cease operations.  To save its employees' jobs and to preserve its economic impact in the community, Fox's Food LLC's chose to sell its assets to a company that could operate with those employees.

The State Court entered a Temporary Restraining Order which was amended on October 19, 2022, (as amended, the "TRO").  The TRO provided that the Debtor was enjoined from abandoning and breaching Fox's Food's supply agreement with HB3 (even though the Debtor is not a party to the Supply Agreement) and that FRG was enjoined from purchasing any products covered by that agreement from anyone other than HB3.  FRG believes that the TRO is no longer in effect, which HB3 disputes.

The Supply Agreement gives HB3 premium prices for the goods supplied by the Supply Agreement, excessive performance bonus fees, and high delivery costs.  Most items under the Supply Agreement could be produced in-house or purchased by FRG far less expensively using alternative suppliers.  Because the Debtor was barred from purchasing core goods from suppliers other than HB3, FRG was trapped in a nonviable business—with its 2022 tax return showing a loss of $165,386 in 2022 and its income statement as of October 30, 2023, showing a net loss of $227,449.63.  Further, the Debtor was forced to defend the HB3 Litigation.  Consequently, the Debtor borrowed additional funds from MNG as it waited for its day in court.  Due to the extremely heavy dockets in the local trial courts, fourteen months passed since the TRO and the Debtor still did not have its day in court.  The Debtor had a choice to either cease operations or file this proceeding.  HB3 has filed a claim (the "HB3 Claim") in this proceeding which subsumes the claim that it filed in the HB3 Litigation.

On March 5, 2024, FRG removed the Removed Action to the Bankruptcy Court and it was assigned Adversary Proceeding No. 24-2007. The Debtor disputes liability for the claims set forth in the Removed Action. On May 24, 2024, HB3 filed its Complaint for Reclassification or Equitable Subordination of Claim of MNG Investments, LLC styled *HB3, LLC v. MNG Investments, LLC*, Adv. Pro No. 24-2038.

On October 15, 2024, the Debtor, HB3, and the Non-Debtor Defendants participated in a mediation with Subchapter V Donald W. Mallory serving as a mediator. The Debtor, HB3, and the Non-Debtor Defendants reached a global settlement of claims. On December 6, 2024, the Debtor filed an amended motion to settle its disputes with HB3. As outlined in the motion, the Debtor and HB3 desired to resolve claims and potential claims against one another as set forth in the settlement agreement (which was served on all parties-in-interest), including, but not limited to, finally settling, resolving, and releasing all claims, issues, and disputes with HB3 The Debtor is filing this Amended Plan in accordance with the settlement agreement, and this Amended Plan is contingent upon Court approval of the settlement agreement. Under the settlement agreement, the Allowed HB3 Claim will be treated as an allowed claim of $290,000, consisting of a priority claim in the amount of $9,791.87 for the Unpaid Goods and a general unsecured claim for the remaining balance. Once the HB3 distribution payments total $270,000, then the amount of any excess will be reallocated to other general unsecured claimants.

### B.    Risks and Benefits Related to the Reorganized Debtor

The risks associated with the Plan are that the Debtor will be unable to receive a favorable ruling with respect to the HB3 Claim. If HB3 prevails in its claim, then general unsecured creditors will receive nothing for their claims because the Debtor will cease operations. The Debtor, however, believes this risk is relatively low due to its strong defenses to HB3's claim; however, the costs of litigation of the HB3 Claim could possibly result in the Debtor's closure.

If the Amended Plan is approved, then the Debtor is projecting an approximate 90% distribution to unsecured creditors. The creditors, which include vendors and lessors, will also have the Debtor as an ongoing customer and tenant for their future business. Moreover, the employees of the Debtor will have secure employment and a stable source of income and health benefits.

### C.    Ongoing Operations

Debtor intends to continue the employment of Jeremy Fox, who is an insider. At the time of the filing of the Bankruptcy Case, Mr. Fox was receiving approximately $1,200 per month in connection with his duties for the Debtor. For so long as Mr. Fox continues on with his current responsibilities, it is anticipated that his pay will remain the same or increase only with cost-of-living adjustments. The ongoing operations also assume that the Debtor will cease purchasing most products from HB3, and such products will instead be produced in-house, with bagels to be supplied by Sammy's Bagels (a company owned by Mr. Fox).

## V.    LIQUIDATION ANALYSIS

Attached as Exhibit 1 is the Debtor's hypothetical liquidation analysis, which assumes the conversion were to occur on or about March 1, 2025. The liquidation analysis is generous for the

creditors in its assumptions of value because it assumes that the Debtor's assets have not depreciated in value since the appraisal which occurred as of September of 2022. Further, the value is "fair market value-installed," not liquidation value. MNG has a blanket lien on the Debtor's assets and is undersecured. The cash assets of the Debtor will be minimal, and will not be enough to cover but a small fraction of administrative claims. The expenses to be paid from the liquidation include, but are not limited to, taxes, wind down expenses, liquidation expenses, accounting expenses, and attorney's fees. Accordingly, under a Chapter 7 liquidation, there is zero chance that unsecured creditors will receive any distribution whatsoever.

On the other hand, under the Plan, unsecured creditors are projected to receive $425,952 over five years.

## VI.    PLAN PAYMENT AND COMMITMENT PERIOD

The Plan provides for a reorganization and restructuring of Debtor's financial obligations. The Plan provides for a distribution to creditors in accordance with the terms of the Plan by the Distribution Agent over the course of the Term, which is a total of five years. The Plan provides for monthly payments on the MNG pre-petition secured debt amortized over ten years, accruing interest at 9.5% per annum. As to the other debt owed by the Debtor, the Plan provides for payment in full of all Allowed Claims over the life of the Plan with payments to be made quarterly per year (beginning on the 15th day following the third full month after the Effective Date). Assuming an Effective Date of March 1, 2025, the distributions to be made are as follows:

| First Distribution | 4/15/2025 | $36,387.75 |
| Second Distribution | 7/15/2025 | $36,387.75 |
| Third Distribution | 10/15/2025 | $36,387.75 |
| Fourth Distribution | 1/15/2026 | $36,387.75 |
| Fifth Distribution | 4/15/2026 | $26,795.99 |
| Sixth Distribution | 7/15/2026 | $26,795.99 |
| Seventh Distribution | 10/15/2026 | $26,795.99 |
| Eighth Distribution | 1/15/2027 | $26,795.99 |
| Ninth Distribution | 4/15/2027 | $24,162.63 |
| Ten Distribution | 7/15/2027 | $24,162.63 |
| Eleventh Distribution | 10/15/2027 | $24,162.63 |
| Twelfth Distribution | 1/15/2028 | $24,162.63 |
| Thirteenth Distribution | 4/15/2028 | $22,872.79 |
| Fourteenth Distribution | 7/15/2028 | $22,872.79 |
| Fifteenth Distribution | 10/15/2028 | $22,872.79 |
| Sixteenth Distribution | 1/15/2029 | $22,872.79 |
| Seventeenth Distribution | 4/15/2028 | $22,582.50 |
| Eighteenth Distribution | 7/15/2028 | $22,582.50 |
| Nineteenth Distribution | 10/15/2028 | $22,582.50 |
| Twentieth Distribution | 1/15/2029 | $22,582.50 |

The classes of claims and treatment proposed for each are summarized in the below table and further described in Section VIII, below.

As outlined below, the Plan proposes to treat the following categories and Classes of Claims as follows, assuming such claims are determined to be Allowed:

| Class | Description | Treatment Summary | Voting Status |
|-------|-------------|-------------------|---------------|
| Class 1 | Allowed Administrative Expense Claims, including Section 503(b)(9) Claims | Paid pro-rata with other holders of Allowed Administrative Expense Claims in accordance with terms, in full in Cash or paid over the period of the Plan | Non-voting |
| Class 2 | Allowed Priority Tax Claims | After payment of Class 1 Claims, paid in Cash or paid over the period of the Plan as provided for by Section 1129(a)(9)(c) | Non-voting |
| Class 3 | MNG Secured Claim | Paid in full—directly by the Debtor on a monthly basis—with 9.5% interest, amortized over 10 years at $4,203.43 per month, with a balloon payment or refinance to come at the end of the Plan. | Voting |
| Class 4 | General Unsecured Creditors with Allowed Claims | After payment in full of Allowed Class 1 and 2 Claims, paid pro rata with any Allowed Class 5 Claim over the remaining term of the Plan. | Voting |
| Class 5 | HB3 Claim | After payment in full of Allowed Class 1 and 2 Claims, paid pro rata with any Allowed Class 4 Claim over the remaining term of the Plan. | Voting |
| Class 6 | Equity Interest | Retained | Non-voting |

## VII.    PROJECTIONS

Debtor anticipates it will be able to pay current operating expenses and fund the Chapter 11 Plan payments.  The Debtor has reviewed the current and historical financials and compiled the projections attached hereto as Exhibit 2.  The forecast is based on historical data and projections of cash flow and the balance sheet through the anticipated date for confirmation and demonstrate the availability of funds to provide for the plan payments as set forth in this document.  The forecast demonstrates that the Plan is feasible.

## VIII.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

In accordance with Section 1123(A) of the Bankruptcy Code, all Claims and Interests are placed in the Classes set forth below. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall

be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is allowed.

### A.    Class 1: Administrative Claims under 11 USC 507(a)

**Description.**   Class I consists of the Allowed Administrative Claims under Section 507(a) and Section 503(b)(9) of the Bankruptcy Code.

The Debtor's attorney's fees approved by the Court and payable to the law firm of Bailey Cavalieri LLC will be paid following the later of the Confirmation Date or approval by the Court first from the retainer deposit on hand from prior to the Petition Date and then from the distributions under the Plan.

The Subchapter V Trustee fees approved by the Court will be paid first from the funds that have been put on deposit with the Subchapter V Trustee since the Petition Date and then from the distributions under the Plan.  It is anticipated that the Subchapter V Trustee will have sufficient funds on deposit to pay his fees.

The Allowed 503(b)(9) Claims approved by the Court will be paid from the distributions under the Plan.

The Debtor's Bankruptcy Case will not be closed until all Allowed Administrative Expense Claims are paid in full.  Class 1 Creditor Allowed Administrative Expense Claims are estimated as of the date of the filing of this Plan, after deduction of any deposits held by the claimants, to not exceed the amount of $90,000.

If the Plan is confirmed pursuant to Section 1191(b), any and all Claims of a kind specified in Sections 507(a)(2) or 507(a)(3) of the Bankruptcy Code will be paid from the payments made to the Subchapter V Trustee for distribution to creditors.

**Treatment.** All Class 1 Claims that are due and owing as of the filing of the Plan shall be paid in full by the Effective Date or as soon as practicable thereafter following approval of professionals' fees.

**Status and Voting.** Class 1 consists of administrative expense claims and are not entitled to vote on a Plan.

### B.    Class 2: Priority Tax Claims

**Description.** Class 2 consists of certain Priority Tax Claims. The Ohio Department of Taxation has filed a priority claim in the amount of $14,407.47.  The Debtor believes that this amount may be excessive, but priority claims will be paid in full.

**Treatment.** The Priority Tax Claims still outstanding as of the Effective Date will be paid in full, with payment commencing only after all Allowed Class 1 Claims have been paid.  This treatment is consistent with Section 1129(a)(9) of the Bankruptcy Code.

14

**Status and Voting.** Class 2 is unimpaired under the Plan and, accordingly, is not entitled to vote to accept or reject the Plan.

### C.    Class 3: MNG Secured Claim

**Description.** Class 3 consists of the MNG secured debt that arose before the Petition Date. The debt is $337,499.92 and is secured by substantially all assets of the Debtor. The debt consists of $325,000 principal, with the remaining amount unpaid interest. MNG has made a Section 1111(b) election, meaning that MNG is entitled to receive payments with a face value equal to the amount of its claim, the present value of which must at least equal the value of the collateral.

**Treatment.** The Class 3 Claim shall be paid under the Plan in monthly payments of $4,205.43 over the term of the Plan with the first payment commencing on the 15th of the month following the first full month after the Effective Date. Regardless of whether the Plan is a consensual or nonconsensual Plan, the payments shall be made directly by the Debtor. MNG will be entitled to a balloon payment at the end of the Plan. The Class 3 Claim shall accrue interest at 9.5%. MNG shall retain its security interest and liens against all assets of the Debtor. In the event of interim sales of assets by the Debtor out of the ordinary course of business, MNG shall be entitled to be paid from such proceeds.

**Status and Voting.** Class 3 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

### D.    Class 4: General Unsecured Creditors with Allowed Claims

**Description.** Class 4 consists of Allowed general unsecured claims consists of the Debtor's vendor and service providers, and does not include the Allowed HB3 Claim described in Class 5. This class of creditors is estimated to have claims amounting to $184,363.55.

**Treatment.** After Class 1 and Class 2 Claims are paid in full, distributions to Class 4 creditors shall commence on a pro rata basis and pro rata with the nonpriority portion of the allowed claim of Class 5.

**Status and Voting.** Class 4 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

15

### E.      Class 5: The Allowed HB3 Claim

**Description.** Class 5 consists of the Allowed HB3 Claim.  The Allowed HB3 Claim shall be in the amount of $290,000, comprised of a Section 503(b)(9) claim in the amount of $9,791.87, with the remaining balance to be treated as a general unsecured claim.  The maximum distribution to HB3 will be $270,000.

HB3 is treated separately from Class 4 because the Allowed HB3 Claim is a compromised claim (contingent upon Court approval) arising from HB3's filed claim (Claim No. 7) with the following components:

- A priority claim in the amount of $9,791.87 for goods received by FRG just prior to the filing of the Bankruptcy Case;

- Performance Bonus Payments in the amount of at least $175,000 under a disputed supply agreement;

- License Fees of $175,000 under a disputed supply agreement;

- Equipment (i.e., the Disputed Assets) claimed to be owned by HB3 that was transferred to FRG as part of the Fox's Food asset purchase but never paid for by Fox's Food.  At that time, the equipment had an appraised value of $44,500 (installed).

- Lost profits in the minimum amount of $827,538.50, with continued damages associated with the failure to adhere to the supply agreement.

Pursuant to the compromise, HB3 has waived its interest in the Disputed Assets, and it has collapsed its claim to $290,000, having a priority component for the unpaid prepetition goods and a general unsecured claim for the remaining balance.  Also, pursuant to the compromise, HB3 has agreed to cap its total distribution at $270,000, regardless of the Debtor's financial performance.

**Treatment.** The Section 503(b)(9) portion of the claim of $9,791.87 shall be paid as a priority claim, prior to any Class 4 distributions.  The remaining balance of the Allowed HB3 Claim shall be treated as a general unsecured claim and shall be paid on a pro rata basis with the Class 4 claims.  When HB3 distributions under the Plan have totaled $270,000, the Allowed HB3 Claim will be deemed satisfied and remaining distributions, if any, shall be allocated to Class 4 claimants.  In no event shall the total distribution on the HB3 Allowed Claim exceed $270,000.

**Status and Voting.** Class 5 is impaired under the Plan and entitled to vote to accept or reject the Plan.

### F.      Class 6: Equity

**Description.**  Class 6 consists of the Equity ownership in the Debtor.

**Treatment.**  Class 6 Equity owners shall be entitled to retain their interests.

**Status and Voting.**  Class 6 is unimpaired under the Plan and not entitled to vote on the Plan.

## IX.    IMPLEMENTATION OF THE PLAN

### A.    Operations of the Reorganized Debtor

The Debtor anticipates that the continued operations of the business will be adequate to fund the Plan over the Term.  The Plan is based on the Debtor's in-house production and the utilization of Sammy's Bagels for its supply of bagels, as well as the purchase of new equipment

### B.    Vesting of Assets in Reorganized Debtor in a Consensual Plan

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date of a confirmed Plan, the Retained Property and Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### C.    Vesting of Assets in Reorganized Debtor in a Non-Consensual Plan

Property of the estate includes, in addition to the property specified in Section 541 of the Bankruptcy Code: (1) all property of the kind specified in Section 541 of the Bankruptcy Code that the debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first; and (2) earnings from services performed by the Debtor after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first. As of the date that the case is closed, dismissed or converted to a case under chapter 7, the Retained Property and any Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property with the supervision or approval of the Subchapter V Trustee and the Bankruptcy Court.

## X.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless rejected prior to the Effective Date, all executory contracts shall be assumed as of the Effective Date of the Plan and will be performed in accordance with their terms unless amended by agreement of the Debtor and applicable party.

## XI.   PROVISIONS GOVERNING DISTRIBUTIONS

### A.   Delivery of Distributions

1.   The first distribution under the Plan will be made by the Debtor to MNG on the 15th of the month following the first full month after the Effective Date.  The first distribution shall be made to Class 1 claimants on the 15th day following the third full month after the Effective Date, or upon Court approval of fees whichever comes later.  The Subchapter V Trustee shall be paid from the funds that he is holding on deposit after approval by the Court.

2.   If the Subchapter V Trustee is the Distribution Agent under the Plan, the Debtor will pay to the Subchapter V Trustee all amounts due to be distributed under the Plan, except the payments to Class 3, on or before the first of the month for each month in which distributions are to be made in accordance with the Plan.

3.   Subject to Bankruptcy Rule 9010, all distributions to holders of Allowed Claims (except the payments to Class 3), in all Classes shall be made by the Distribution Agent (a) at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the elate of such holders' proof of claim, or (c) at the addresses reflected in the Debtor's schedules if no proof of claim has been filed.

4.   For a non-consensual plan, notwithstanding Section 1194(b) of the Bankruptcy Code, Debtor shall make the monthly payments directly to the Class 3 claimholder.

5.   The Debtor or (if any purpose would be served) the Subchapter V Trustee shall object to Claims within 60 days after the Effective Date.

6.   At the close of business 60 days after the Effective Date, the claims register will be closed, and there will be no further changes in the record holders of any Claims. The Distribution Agent will have no obligation to recognize any transfer of any Claim occurring after the close of business 60 days after the Effective Date, and will instead be entitled to recognize and deal for all purposes under the Plan (except as to voting on the Plan) with only those holders of record as of the close of business as of that time.

7.   If any payment to a creditor would be less than $5.00, the Distribution Agent is authorized to hold that payment until the next distribution and pay both installments at the same time.

### B.   Undeliverable Distributions

If any distribution with respect to any Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Distribution Agent is notified of such holder's then current address, at which time all distributions owing to such holder shall be made to such holder without interest. All claims for undelivered distributions made to holders of Allowed Claims shall be made within 90 days of the relevant distribution date. After such date, all

18

unclaimed distributions shall revert to the Reorganized Debtor and the Claim of any holder or successor to such holder with respect to such distribution shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

## XII.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

The Debtor may alter, amend or modify this Plan under Section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Confirmation Date, the Debtor may only alter, amend or modify the Plan in accordance with Section 1193(b) or (c), as applicable, of the Bankruptcy Code.

## XIII.    RETENTION OF JURISDICTION

### A.    Continuing Jurisdiction of the Bankruptcy Court

Pursuant to Sections 1105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent permitted by applicable law, including but not limited to:

1.   to determine any and all applications, adversary proceedings, and contested matters pending as of the Effective Date;

2.   to determine any and all objections to the allowance of Claims;

3.   to determine any and all applications for allowance of compensation and reimbursement of expenses;

4.   to determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

5.   to effectuate payments under and performance of the provisions of the Plan;

6.   to enter such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

7.   to determine the Reorganized Debtor's motion, if any, to modify the Plan in accordance with Section 1193 of the Bankruptcy Code;

8. to issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

9. to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10. to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

19

11. to hear and determine any issue for which the Plan or any related document requires a Final Order of the Bankruptcy Court;

12. to enter a final decree closing the Bankruptcy Case;

13. to determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

14. to determine any increase or decrease in the debtor's monthly payment, as provided in the Plan;

15. to approve, pursuant to Section 365 of the Bankruptcy Code, the assumption, assignment or rejection of any executory contract or unexpired lease, except as otherwise provided in the Plan;

16. to determine a request for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto.

## B.    District Court Jurisdiction

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the Bankruptcy Court in this Article shall be deemed to be a reference to the United States District Court for the Southern District of Ohio.

## XIV.   SPECIAL PROVISIONS

### A.    Fees of Professionals

With respect to the professional fee claims arising after the Effective Date, the Reorganized Debtor shall pay such professional fee claims in the ordinary course of its business without the necessity of any professionals being required to file an application for such professional fee claims.

### B.    Exculpation and Limitation of Liability

On the Effective Date, the Debtor and all holders of Claims against and Interests in the Debtor will be conclusively deemed to release all professionals retained by order of the Bankruptcy Court in the Chapter 11 Case and all of such professionals', respective officers, directors, employees, principals, partners and agents, and all officers and directors of the Debtor holding such offices at any time through the Effective Date from all liabilities, claims, costs, damages and expenses, except for Claims arising from fraud, willful misconduct or gross negligence to such persons, arising out of the Chapter 11 through the Effective Date.

20

**C.      Subchapter V Trustee Disclosures and Fees**

1.  For a non-consensual Plan, the Subchapter V Trustee shall continue to be paid at his hourly rate subject to post-confirmation fee applications under Section 330 of the Bankruptcy Code until the completion of the Plan. The Debtor shall pay the fees and expenses directly to the Subchapter V Trustee within 30 days after the entry of the order approving same.

2.  If the Plan is nonconsensual, the Debtor will provide any information to the Subchapter V Trustee that is reasonably requested in relation to the determination of any distribution.

**D.      Bar Date for all Administrative Expense Claims**

All requests for payment or any Administrative Expense Claim are subject to authorization and approval of the Bankruptcy Court. Holders of Administrative Expenses Claims that do not file a request with the Bankruptcy Court and serve on all parties entitled to notice thereof no later than sixty (60) days after the Effective Date, are forever barred from asserting such claims except as provided in the Plan. Any objections to an Administrative Expense Claim shall be filed in accordance with the Bankruptcy Rules and the local rules of the Bankruptcy Court.

**E.      Suspension of Payments**

If payments under a non-consensual Plan are made by the Subchapter V Trustee, the Debtor may apply to the Court for suspension of payments. Notice of such request for suspension of payments shall be given to the Trustee, the United States Trustee and all affected parties. The Court, after notice and a hearing may suspend the payments for not more than ninety (90) days. Such suspension shall extend the length of the term of the Plan by the term of the suspension.

**F.      Discharge Provisions**

If the Plan is consensual, a discharge shall issue upon confirmation and the Debtor shall make all required payments under the Plan.

If the Plan is nonconsensual, payments under the Plan will be made by the Subchapter V Trustee appointed by the Court and a discharge under Section 1192 shall be issued when the final distribution is made under the terms of the Plan.

**G.      Protection of Creditors under Section 1191(c) if Payments are not made under the Plan or any Amended Plan**

Should the Debtor not make payments as provided in the Plan within 45 days of the date the payment is due under the Plan or any amended Plan or as authorized by the Court, unless otherwise ordered by the Court, secured and unsecured creditors shall not be bound by the discharge injunction as to their collateral and may proceed against their security interest. The rights of unsecured creditors shall be restored to proceed against the Debtor for the total amount of the debt owed, minus any payment received under the Plan.

21

### H.    Treatment of Allowed Secured Claims

The amount of any allowed secured claim shall be that amount as proposed in the Plan unless amended pre-confirmation by an amended Plan or by Court Order. Any deficiency amount of a proposed secured claim shall be paid as an unsecured claim, unless otherwise provided for in the Plan.

### I.    Interest Rate

The interest rate applicable to the Class 3 claims shall be 9.5%.

No interest shall be paid on the Unsecured Claims.

### J.    Set Offs

The Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever which the Reorganized Debtor may have against the holder of such Claim to the extent such claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor, of any such claim or counterclaim that it may have against such holder.

### K.    Manner of Payments

Unless the person or entity receiving a payment agrees otherwise, any payment of Cash to be made by the Distribution Agent shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

### L.    Time Bar to Cash Payments

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly, as applicable, to either the Reorganized Debtor or Distribution Agent by the holder of the Allowed Claim with respect to which such check originally was issued.

Any Claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and forwarded to the Reorganized Debtor who shall retain all monies related thereto.

### M.    Payments and Distributions on Disputed Claims

No partial payments and no partial distributions shall be made with respect to a disputed Claim until the resolution of such disputes by settlement or final order. As soon as practicable after a

disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

### N.    Approval of Executory Contract Rejection and Assumption

Entry of the Confirmation Order shall constitute approval, pursuant to Section 365(a) of the Bankruptcy Code of the rejection and assumption of any executory contracts and unexpired leases rejected pursuant to the Plan. Notwithstanding anything contained herein to the contrary, the Debtor hereby retains the right to add or delete any executory contract or unexpired lease that is designated for rejection at any time prior to the Confirmation Date, upon notice to parties affected by such change.

### O.    Post-Filing Date Contracts and Leases

Executory contracts and unexpired leases entered into, and other obligations incurred after the Petition Date by the Debtor shall, unless expressly rejected, be performed by the Reorganized Debtor in the ordinary course of its business affairs.

### P.    Notice of Default

Unless expressly provided herein to the contrary, no claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to the Reorganized Debtor and the Subchapter V Trustee if still serving in the Case. The Reorganized Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.

## XV.    DISCHARGE OF ALL CLAIMS AND RELEASES

### A.    Discharge pursuant to Section 1141(a)

Upon the granting of a discharge under Section 1141(d) of the Bankruptcy Code, the Discharge Order shall operate as a discharge pursuant to, and to the fullest extent provided in and permitted by, Section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, its assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind:

   a.   a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

   b.   a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

   c.   the holder of a Claim based upon such debt has accepted the Plan as specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the creditor has accepted the Plan.

### B.    Discharge pursuant to Section 1192

As soon as practicable after completion by the Debtor of all payments due not to exceed five (5) years or as the Bankruptcy Court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of this title and provided for in the Plan, except any debt:

      a.     on which the last payment is due under the Term; or

      b.     of the kind specified in Section 523(a) of this title.

## XVI.  MISCELLANEOUS PROVISIONS

### A.    Successors and Assigns

The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such person.

### B.    Binding Effect

The Plan shall be binding upon, and shall inure to the benefit of the Debtor, the holders of all Claims and Interests and their respective successors and assigns.

### C.    Modification of Payment Terms

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

### D.    Valuation

Any claim for fees, costs, or other charges shall be made by the creditor by application to the Court. Such fees, costs or charges must be reasonable as required by Section 506(6) of the Bankruptcy Code.

### E.    Default and Waiver

Any default of the Debtor that is not proposed to be cured in the Plan herein is deemed waived by the Confirmation of the Plan.

### F.    Substitution of Collateral

If any collateral of the Debtor is substantially damaged while there is still an unpaid Claim which is secured by the collateral, the Debtor shall have the option of using the insurance proceeds to either repair the collateral, pay off the balance of the Allowed Secured Claim if the secured creditor is a named loss payee on the policy, or to substitute collateral by purchasing replacement collateral and the Reorganized Debtor will continue to pay the secured claim.

### G.    Termination of Subchapter V Trustee

If the Plan is confirmed consensually pursuant to Section 1191(a), the Subchapter V Trustee shall be terminated upon Substantial Consummation.

If the Plan is Confirmed non-consensually pursuant to Section 1191(b), the Subchapter V Trustee shall be terminated after the final distribution payment made pursuant to the terms of the Plan.

The Subchapter V Trustee shall be terminated upon dismissal of the case or its conversion to another chapter.

### H.    Tax Consequences

Implementation of the Plan may result in federal income tax consequences to holders of claims, equity interest holders and to the Debtor. In this case, most of the creditors will not be in full the amount of their Claims. Tax consequences to a particular creditor or equity interest holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the equity interest holder. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

### I.    Risk to Creditors Under the Debtor's Plan

Claimants and equity interest holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be funds to pay Claims of creditors.

Dated: December 30, 2025

*/s/ Jeremy Fox via email authority granted to
Matthew T. Schaeffer December 30, 2025*

_____
Jeremy Fox, Authorized Representative

**EXHIBIT 1**
**Liquidation Analysis**

**Assets (Estimated)**

| | | |
|---|---|---|
| **Checking/Savings** | 60,000 | |
| **Cash on Hand** | 2,500 | |
| **Total Checking/Savings** | | **62,500.00** |

| | |
|---|---|
| **Total Accounts Receivable** | **10,000.00** |

**Other Current Assets**

| | | |
|---|---|---|
| **Inventory Asset** | 8,240.00 | |
| **Prepaid Utilities** | 421.91 | |
| **Security Deposit – NM** | 3,904.00 | |
| **Security Deposit – Office** | 1,553.00 | |
| **Total Other Current Assets** | 14,118.91 | |
| **Total Current Assets** | | **53,464.59 (Secured by MNG)** |

**Fixed Assets**

| | |
|---|---|
| **FMV – Installed** | **233,110.00 (Secured by MNG)** |

| | |
|---|---|
| **TOTAL ASSETS** | **$359,074.59 (of which $72,500 is unsecured)** |

| | |
|---|---|
| **Chapter 7 Liquidation** | **$72,500 Assets** |
| **Chapter 7 Administration Fees** | |
|      **Attorneys** | **– 2,500** |
|      **(Trustee % compensation)** | **– 6,875** |
| **Remaining for Ch. 11 Admin Fees** | **$63,125** |
| **Ch. 11 Admin Fees** | **$8,000** |
| **Remainder for unsecureds** | **$0** |

| | |
|---|---|
| **Plan** | |
| **Net Income for Unsecured Creditors** | **$425,952.00** |
| **Unsecured Claims (estimated)** | **$475,000.00** |
| | **Distribution 90%** |
| | **Distribution 12%** |

26

**EXHIBIT 2**
**Projections**

**[Next Page]**

FRG Enterprises LLC Debtor in Possession
Profit & Loss Proforma
2025-2029

| | | TOTAL 2025 | TOTAL 2026 | TOTAL 2027 | TOTAL 2028 | TOTAL 2029 | 25-'29 Total Status @ End of Bankruptcy |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| | Total Sales | $ 1,798,246 | $ 1,798,246 | $ 1,816,228 | $ 1,861,634 | $ 1,889,558 | 9,163,912 |
| | Tips | $ 128,475 | $ 128,475 | $ 129,760 | $ 133,004 | $ 134,999 | 654,712 |
| Total Income | | $ 1,926,740 | $ 1,926,740 | $ 1,946,007 | $ 1,994,658 | $ 2,024,577 | 9,818,722 |
| **Cost of Goods Sold** | | | | | | | |
| | Total Food | $ 573,221 | $ 573,221 | $ 578,953 | $ 593,427 | $ 602,328 | 2,921,150 |
| | Total Fuel/Shipping | $ 3,360 | $ 3,360 | $ 3,360 | $ 3,360 | $ 3,360 | 16,800 |
| | Merchant Account Fees | $ 116,144 | $ 116,144 | $ 117,305 | $ 120,238 | $ 122,042 | 591,873 |
| | Paper Products | $ 78,361 | $ 78,361 | $ 79,144 | $ 81,123 | $ 82,340 | 399,327 |
| | Total Payroll | $ 634,939 | $ 634,939 | $ 641,144 | $ 656,813 | $ 666,449 | 3,234,284 |
| Total COGS | | $ 1,406,024 | $ 1,406,024 | $ 1,419,907 | $ 1,454,961 | $ 1,476,519 | 7,163,435 |
| Gross Profit | | $ 520,716 | $ 520,716 | $ 526,100 | $ 539,697 | $ 548,059 | 2,655,287 |
| **Expense** | | | | | | | |
| | Administrative Salary | $ 100,636 | $ 115,734 | $ 127,307 | $ 140,038 | $ 144,442 | 628,160 |
| | Advertising and Promotion | $ 6,666 | $ 6,666 | $ 6,666 | $ 6,666 | $ 6,666 | 33,330 |
| | Auto Expenses | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | 15,000 |
| | Bank Fees | $ 480 | $ 480 | $ 480 | $ 480 | $ 480 | 2,400 |
| | Business Licenses and Permits | $ 666 | $ 666 | $ 666 | $ 666 | $ 666 | 3,330 |
| | Cleaning-Sanitation Supplies | $ 19,075 | $ 19,075 | $ 19,265 | $ 19,747 | $ 20,043 | 97,205 |
| | Dues and Subscriptions | $ 480 | $ 480 | $ 480 | $ 480 | $ 480 | 2,400 |
| | Insurance Expense | $ 17,115 | $ 17,115 | $ 17,286 | $ 17,719 | $ 17,984 | 87,220 |
| | Linen Expense | $ 13,919 | $ 13,919 | $ 14,058 | $ 14,409 | $ 14,626 | 70,930 |
| | Meals and Entertainment | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | 5,000 |
| | Miscellaneous Expense | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | 9,000 |
| | Office Supplies | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | 5,000 |
| | Payroll Expenses | $ 4,200 | $ 4,200 | $ 4,200 | $ 4,200 | $ 4,200 | 21,000 |
| | POS and Computer Software | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | 30,000 |
| | Rent | $ 107,054 | $ 110,266 | $ 113,574 | $ 116,981 | $ 120,491 | 568,366 |
| | Repairs and Maintenance | $ 6,066 | $ 6,066 | $ 6,066 | $ 6,066 | $ 6,066 | 30,330 |
| | Security Systems | $ 1,422 | $ 1,422 | $ 1,422 | $ 1,422 | $ 1,422 | 7,109 |
| | Uniforms | $ 600 | $ 600 | $ 600 | $ 600 | $ 600 | 3,000 |
| | Utilities | $ 53,571 | $ 53,571 | $ 54,107 | $ 55,459 | $ 56,291 | 273,000 |
| Total Expense | | $ 344,752 | $ 363,060 | $ 378,978 | $ 397,734 | $ 407,257 | 1,891,781 |
| Net Other Income | | $ - | $ - | $ - | $ - | $ - | 0 |
| Net Income | | $ 176,023 | $ 157,656 | $ 147,123 | $ 141,963 | $ 140,802 | 763,567 |
| | | | | | | | |
| | Beginning Cash | 50,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | |
| | Reserve | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | |
| | **TOTAL** | 196,023.00 | 157,655.96 | 147,122.54 | 141,963.18 | 140,802.00 | 783,566.68 |
| | | | | | | | |
| | **Bankruptcy Payments:** | | | | | | |
| | Admin Claims | 90,788.58 | 0.00 | 0.00 | 0.00 | 0.00 | 90,788.58 |
| | Priority Claim | 14,466.54 | 0.00 | 0.00 | 0.00 | 0.00 | 14,466.54 |
| | MNG Secured | 50,472.00 | 50,472.00 | 50,472.00 | 50,472.00 | 50,472.00 | 252,360.00 |
| | Unsecured Creditors | 40,295.88 | 107,183.96 | 96,650.54 | 91,491.18 | 90,330.00 | 425,951.56 |
| | TOTAL: | 196,023.00 | 157,655.96 | 147,122.54 | 141,963.18 | 140,802.00 | 783,566.68 |
| | Total less MNG payment | 145,551.00 | 107,183.96 | 96,650.54 | 91,491.18 | 90,330.00 | |
| | Quarterly Plan Payment | $36,387.75 | $26,795.99 | $24,162.63 | $22,872.79 | $22,582.50 | |

**Estimated Claims**

| | |
|---|---|
| Admin | $90,788.58 |
| Priority | $14,466.54 |
| MNG Secured | $337,499.92 |
| Unsecured Claims | $485,336.64 Updated- HB3 Trade Pre-petition |

**EXHIBIT B**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No: 23-54240 |
| | ) | |
| FRG Enterprises, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Hoffman |
| | ) | |

---

AMENDED PLAN OF REORGANIZATION

OF

FRG ENTERPRISES, LLC

---

Dated: ~~March 5~~December 30, 2024                Respectfully submitted,


                                                  */s/ Matthew T. Schaeffer*
                                                  Matthew T. Schaeffer, Esq.    (0066750)
                                                  Bailey Cavalieri LLC
                                                  10 West Broad Street, Suite 2100
                                                  Columbus, Ohio 43215
                                                  P: 614-229-3289 / F: 614-221-0479
                                                  E-Mail:  mschaeffer@baileycav.com

                                                  *Counsel for Debtor and Debtor-In-Possession*
                                                  *FRG Enterprises, LLC*

# TABLE OF CONTENTS

**UNITED STATES BANKRUPTCY COURT** ............................................................ 1

**SOUTHERN DISTRICT OF OHIO** ........................................................................ 1

**EASTERN DIVISION** ............................................................................................ 1

I.    INTRODUCTION ........................................................................................... 4

    A.    Explanation of Chapter 11 ....................................................................... 4

    B.    Explanation of the process of Confirmation ............................................ 4

    C.    Voting Procedures .................................................................................... 4

    D.    Best Interests of Creditors Test ................................................................ 4

II.   DEFINITIONS ................................................................................................ 5

III.  REPRESENTATIONS ................................................................................ 99̶8̶

IV.   HISTORY ................................................................................................... 109̶

    A.    Events Leading to the Commencement of the Bankruptcy Case ............ 10

    B.    Risks and Benefits Related to the Reorganized Debtor .......................... 11

    C.    Ongoing Operations ........................................................................... 12̶1̶2̶11

V.    LIQUIDATION ANALYSIS ................................................................... 12̶1̶2̶11

VI.   PLAN PAYMENT AND COMMITMENT PERIOD .................................. 12

VII.  PROJECTIONS ........................................................................................ 14̶1̶4̶13

VIII. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS
      14̶1̶4̶13

    A.    Class 1: Administrative Claims under 11 USC 507(a) ....................... 14̶1̶4̶13

    B.    Class 2: Priority Tax Claims ............................................................. 15̶1̶5̶14

    C.    Class 3: MNG Secured Claim ........................................................... 15̶1̶5̶14

    D.    Class 4: General Unsecured Creditors with Allowed Claims ............. 16̶1̶6̶15

    E.    Class 5: The HB3 General Unsecured Claim ..................................... 16̶1̶6̶15

    F.    Class 6: Equity ................................................................................. 17̶1̶7̶15

IX.   IMPLEMENTATION OF THE PLAN ................................................... 17̶1̶7̶15

    A.    Operations of the Reorganized Debtor .............................................. 17̶1̶7̶15

    B.    Vesting of Assets in Reorganized Debtor in a Consensual Plan ......... 18̶1̶7̶16

    C.    Vesting of Assets in Reorganized Debtor in a Non-Consensual Plan ...... 18̶1̶8̶16

X.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 18̶1̶8̶16

XI.   PROVISIONS GOVERNING DISTRIBUTIONS ................................... 18̶1̶8̶16

    A.    Delivery of Distributions ................................................................... 18̶1̶8̶16

    B.    Undeliverable Distributions ............................................................... 19̶1̶9̶17

XII.      MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ........... 19~~1917~~

XIII.     RETENTION OF JURISDICTION ......................................................................... 20~~1918~~

   A.    Continuing Jurisdiction of the Bankruptcy Court ...................................... 20~~1918~~

   B.    District Court Jurisdiction ........................................................................ 21~~2119~~

XIV.     SPECIAL PROVISIONS .................................................................................... 21~~2119~~

   A.    Fees of Professionals ................................................................................ 21~~2119~~

   B.    Exculpation and Limitation of Liability .................................................... 21~~2119~~

   C.    Subchapter V Trustee Disclosures and Fees .............................................. 21~~2119~~

   D.    Bar Date for all Administrative Expense Claims ....................................... 21~~2119~~

   E.    Suspension of Payments ............................................................................ 22~~2220~~

   F.    Discharge Provisions ................................................................................ 22~~2220~~

   G.    Protection of Creditors under Section 1191(c) if Payments are not made under the Plan
or any Amended Plan .......................................................................................... 22~~2220~~

   H.    Treatment of Allowed Secured Claims ...................................................... 22~~2220~~

   I.    Interest Rate ............................................................................................. 22~~2220~~

   J.    Set Offs .................................................................................................... 22~~2220~~

   K.    Manner of Payments ................................................................................. 23~~2321~~

   L.    Time Bar to Cash Payments ....................................................................... 23~~2321~~

   M.    Payments and Distributions on Disputed Claims ....................................... 23~~2321~~

   N.    Approval of Executory Contract Rejection and Assumption ....................... 23~~2321~~

   O.    Post-Filing Date Contracts and Leases ...................................................... 23~~2321~~

   P.    Notice of Default ...................................................................................... 24~~2322~~

XV.      DISCHARGE OF ALL CLAIMS AND RELEASES ........................................... 24~~2422~~

   A.    Discharge pursuant to Section 1141(a) ..................................................... 24~~2422~~

   B.    Discharge pursuant to Section 1192 .......................................................... 24~~2422~~

XVI.     Miscellaneous Provisions ................................................................................ 24~~2422~~

   A.    Successors and Assigns ............................................................................. 24~~2422~~

   B.    Binding Effect ........................................................................................... 24~~2422~~

   C.    Modification of Payment Terms ................................................................. 25~~2523~~

   D.    Valuation .................................................................................................. 25~~2523~~

Any claim for fees, costs, or other charges shall be made by the creditor by application to the
Court. Such fees, costs or charges must be reasonable as required by Section 506(6) of the
Bankruptcy Code. ...................................................................................................... 25~~2523~~

   E.    Default and Waiver ................................................................................... 25~~2523~~

   F.    Substitution of Collateral .......................................................................... 25~~2523~~

3

G.    Termination of Subchapter V Trustee.................................................... 25~~2523~~

H.    Tax Consequences ................................................................................ 26~~2624~~

I.    Risk to Creditors Under the Debtor's Plan .......................................... 26~~2624~~

FRG Enterprises, LLC, Debtor and Debtor in Possession (the "Debtor"), hereby submits this Chapter 11 Subchapter V Plan pursuant to Section 1121(a) of the Bankruptcy Code and requests confirmation of the Plan pursuant to Section 1129 and Section 1191 of the Bankruptcy Code. All holders of Claims and Interests entitled to vote to accept or reject the Plan should read the Plan in its entirety before voting to accept or reject the Plan.

# I.    **INTRODUCTION**

Debtor filed its voluntary Chapter 11 case in the Bankruptcy Court on March 6, 2023.  The Debtor operates two food service establishments under the name of "Fox's Bagel and Deli."  The Debtor's main restaurant is in the Bexley area, and it has a location in the North Market in Columbus.

## A.    **Explanation of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. There are different types of Chapter 11 designations. In this case, Debtor has chosen to proceed under a Subchapter V ("Subchapter V"), which was established to benefit small businesses, their creditors and their equity interest holders.  Under Chapter 11, a debtor typically files a plan of reorganization which sets forth the means for addressing the claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## B.    **Explanation of the Pp̲rocess of Confirmation**

Although creditors and interests may vote to accept or reject a proposed plan, Subchapter V of Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan for it to be confirmed by the Court.  Generally, the court will hear the objections of any parties-in-interest and hold a hearing to determine whether a proposed plan conforms to the requirements of Chapter 11.

## C.    **Voting Procedures**

Debtor is seeking a consensual plan of reorganization, which requires that no creditors vote to reject the plan.  Otherwise, the Debtor will seek to confirm the Plan on a non-consensual basis under Section 1191(B).  Each holder of an Allowed Claim may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing such ballot.

## D.    **Best Interests of Creditors Test**

Section 1129(a)(8) of the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's general unsecured creditors would not be paid any portion of the debt that is owed to them. Because the Plan proposes a distribution to general unsecured creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## II.  **DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.      "Administrative Expense" shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy Case of a kind specified under Section 503(b) of the Bankruptcy Code and entitled to priority under Sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including professional services.

2.      "Allowed" shall mean, with respect to (a) any Claim, (i) a Claim, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or (ii) a Claim that has been or hereafter is scheduled by the Debtor as liquidated in amount or not disputed or contingent and, is scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, (b) a Claim as to which no objections to the allowance thereof has been filed.

3.      "Bankruptcy Case" shall mean the bankruptcy case commenced in the Bankruptcy Court by the debtor under Case No. 23-54240 currently pending in the United States Bankruptcy Court, Southern District of Ohio.

4.      "Bankruptcy Code" or "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code.

5.      "Allowed Claim" shall mean any claim against the Debtor filed before the claims bar date set by the Bankruptcy Court or is scheduled by the Debtor as liquidated or not disputed or contingent as to which no objections to allowance thereof has been filed or, if any objection is filed, such objection has been determined.

5.        "Allowed HB3 Claim" shall mean the claim of HB3, LLC as agreed upon by the Debtor and HB3 pursuant to a certain settlement agreement which is the subject of the *Debtor's Amended 9019 Motion for Authority to Compromise the HB3 LLC Litigation and Related Matters* (Doc. 110).

6.        "Bankruptcy Court" shall mean the court in the Southern District of Ohio conferred with authority over the Bankruptcy Case or the court so authorized with respect to any proceedings in connection therewith for the purpose of such proceedings.

7.        "Bankruptcy Rules" shall mean the Bankruptcy Rules as in effect on the filing date, together with local rules adopted by the Bankruptcy Court, or such similar rules as may be in effect from time to time in the Bankruptcy Court.

8.        "Cash" shall mean cash, cash equivalents, or other readily marketable securities or instruments.

9.        "Claim" means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

10.       "Claimant" means the holder of a Claim or Interest.

11.       "Class" means all the holders of Claims or Interests with respect to the Debtor as designed in a class in this Plan.

12.       "Confirmation Date" means the date of entry by the Bankruptcy Court of an Order confirming the Plan of Reorganization in accordance with the Code.

13.       "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Court.

14.       "Consensual Discharge Order" shall mean an Order of the Bankruptcy Court discharging the debtor pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent provided in and permitted by Section 1141(d) of the Bankruptcy Code, of any and all debts, claims and liens that arose at any time on the debtor, its assets, or properties, which debts, claims and liens arose at any time before the entry of the Confirmation Order, any debt of a kind specified in Sections 502(g), 502(h) or 502 (i) of the Bankruptcy Code, whether or not:

        a.    A proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

        b.    A Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

c.      The holder of a Claim based upon such debt has accepted the Plan.

15.      "Disputed Assets" means the assets in which HB3 ~~or Fox's Food, LLC~~ claims an interest.  These assets ~~are~~ include (1) a bread slicer; (2) stainless steel worktable on casters w/ can opener; (3) sink, three bowl, stainless steel; (4) rotating oven, 5 rack; (5) boiler; (6) stainless steel worktable; ~~and,~~ (4 7) bagel racks; and (7) any other equipment referenced in the proof of claim filed by HB3.~~.~~

16.      "Distribution Agent" shall mean the reorganized debtor if the Plan is consensual or the Subchapter V Trustee if the Plan is non-consensual.

17.      "Effective Date" shall mean the first day after the first full month after entry of the Confirmation Order, whichever is later.  The Debtor shall file a notice of the Effective Date following confirmation of the Plan.

18.      "FRG" and "Debtor" shall mean FRG Enterprises, LLC.

19.       "Impaired" shall mean, with respect to any Claim or class of claims, the condition or effects described in Section 1124 of the Bankruptcy Code.

20.      "Interest" means (i) the ownership interests in the Debtor and (ii) any right or option, however arising, to acquire an ownership interest or any other equity interest in the Debtor.

21.      "Non-Consensual Discharge Order" shall mean an Order of the Bankruptcy Court pursuant to Section 1192 of the Bankruptcy Code, discharging the Debtor of any and all debts, claims and liens that arose at any time on the Debtor, its assets, or properties, which debts, claims and liens arose at any time before the entry of the Confirmation Order that are provided in Section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of this title and provided for in the Plan, except:

a.      on which the last payment is due after the 3 to 5 years as fixed by the Court; or

b.      of the kind specified in Section 523(a) of this title.

22.      "Petition Date" shall mean December 6, 2023.

23.       "Plan" shall mean the Debtor's Plan of Reorganization filed by the Debtor together with the exhibits which may be amended from time to time.

24.      "Priority Tax Claim" means all Claims for Taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

25.      ~~"Proposed Amount of Allowed Secured Claim" shall mean the amount of any Secured Claim as set forth in the Plan.~~

26.        "Pro Rata Allocation" shall mean with respect to the holder of an Allowed Claim in the Class of Claims, a fraction equal to such holder's claim divided by the total amount of all claims in the class.

27.25.      "Reorganized Debtor" shall mean the Debtor from and after the Effective Date.

28.26.      "Retained Property" shall mean (i) all property of the Estate, and (ii) the Exempt Property which was not subject to administration but was retained by Debtor/reorganized Debtor.

29.27.      "Secured" shall mean, with respect to any Claims, a Claim secured by a valid and unavoidable lien on or security interest in property of the Debtor, to the extent of the value of such lien or security interest in accordance with Section 506(a) of the Bankruptcy Code, including, if such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

30.28.      "State Court" shall mean the Franklin County Court of Common Pleas.

31.        "Subordinated Claim" means (i) any Claim, or portion of a Claim, that is subject to subordination under Section 510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple exemplary, or punitive damages, or other non-pecuniary, direct or non-proximate damages.

32.29.      "Subchapter V Trustee" means Donald Mallory or any other individual appointed as trustee under Section 1183 of the Bankruptcy Code.

33.30.      "Substantial Consummation" shall occur when (i) substantially all of the property to be transferred under the Plan has been transferred; (ii) the debtor or its successor has assumed the business or management of substantially all of the property dealt with by the Plan; and (iii) distributions under the Plan have commenced. The Debtor shall file a notice of Substantial Consummation within 14 days of the date of Substantial Consummation.

34.31.      "Supply Agreement" means the License and Supply Agreement between Fox's Food LLC and HB3, LLC.

35.32.      "Tax" means and includes any federal, state, county, and local income, ad valorem, excise stamp and other tax of any type or nature whatsoever.

36.33.      "Tax Claim" means all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to Section 507(a)(8) of the Bankruptcy Code; or (ii) secured by valid liens on the property of the Bankruptcy Estate existing on the Confirmation Date.

37.34.      "Term" shall mean five years beginning with the Effective Date of the Plan.

38.35.      "Unsecured" shall mean, with respect to any Claim, a Claim to the extent of the thethree yea amount of such Claim that (a) is not secured by any valid and unavoidable lien on or security interest in property of the Debtor or (b) is greater than the value and unavoidable lien on or security

interest in property of the Debtor which secures such Claim.

## III.   <u>REPRESENTATIONS</u>

NO REPRESENTATIONS CONCERNING DEBTOR IS AUTHORIZED BY DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE OHIO DEPARTMENT OF COMMERCE DIVISION OF SECURITIES, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.   FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY, ULTIMATELY, TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

IV.    **HISTORY**

The Debtor is an Ohio limited liability company created in July of 2022. Since October of 2022, the Debtor has operated "Fox's Bagel and Deli" in the Bexley area and in the North Market.  It specializes in bagels and deli sandwiches.  The Bexley location is open every day, and offers breakfast and lunch, bagels, deli sandwiches, deli meats, salads, sides, and desserts.  The North Market location is a stall in the North Market, offering a variety of bagels, sandwiches, salads, and sides.

The Debtor is owned by Jeremy Fox (owning 75%) and MNG Investments LLC (owning 25%)("MNG").  It has approximately 24 employees.

To begin operations, the Debtor borrowed funds from MNG and purchased substantially all of the assets (the "Asset Purchase") of Fox's Food, LLC, a company that is owned by Mr. Fox and which operated Block's Bagels in the locations now occupied by Fox's Bagel and Deli.  The Asset Purchase was based upon an appraisal of the assets, with the funds going directly to Fox Foods, LLC's secured lender, the Huntington National Bank.  MNG took a lien in the purchased assets which was properly perfected under Ohio law.  As part of the Asset Purchase, the Debtor also assumed Fox's Food, LLC's leases in Bexley and in the North Market.

A.    **Events ~~Leading to the Commencement of the Bankruptcy Case~~Prior to and During the Bankruptcy Case**

Following the Asset Purchase, the Debtor was sued (the "HB3 Litigation") by HB3, LLC ("HB3," a supplier of Block's bagels to Fox's Food, LLC), alleging that (i) FRG received a fraudulent transfer from Fox's Food LLC, (ii) FRG is a successor to Fox's Food, LLC's under a supply agreement with an initial term of ten years from September 28, 2016 (the "Supply Agreement") as a "mere continuation" of Fox's Food, LLC or otherwise; and (iii) FRG is required to honor the Supply Agreement.  The claims primarily alleged that HB3 was harmed by the termination of the License and Supply Agreement and the claims centered on fraudulent transfer, successor liability, tortious interference, breach of contract, and fraud theories relating to the asset purchase.  FRG believes that the claims are specious because the asserts transferred under the Asset Purchase were almost fully encumbered by the Huntington National Bank and therefore do not qualify as a "transfer" under the Ohio Uniform Fraudulent Transfer Act.  Moreover, FRG paid reasonably equivalent value for the assets under the Asset Purchase.  Finally, HB3 has no damages as result of the Asset Purchase because Fox's Food LLC was not a viable business and would have ceased operations regardless of whether the Asset Purchase was consummated.  HB3 also named Fox's Food LLC, Ronald Fox, Jeremy Fox, Sammy's Bagels, LLC, Michael N. Gasbarro, the Michael N. Gasbarro Trust, MNG, and Heirloom LLC as additional defendants (the "Non-Debtor Defendants").  Prior to the Asset Purchase, Fox's Foods LLC attempted to resolve its differences with HB3, but HB3's demands left Fox's Foods LLC with no alternative but to cease operations.  To save its employees' jobs and to preserve its economic impact in the community, Fox's Food LLC's chose to sell its assets to a company that could operate with those employees.

The State Court entered a Temporary Restraining Order which was amended on October 19, 2022, (as amended, the "TRO").  The TRO provided that the Debtor was enjoined from abandoning and

breaching Fox's Food's supply agreement with HB3 (even though the Debtor is not a party to the Supply Agreement) and that FRG was enjoined from purchasing any products covered by that agreement from anyone other than HB3. FRG believes that the TRO is no longer in effect, which HB3 disputes.

The Supply Agreement gives HB3 premium prices for the goods supplied by the Supply Agreement, excessive performance bonus fees, and high delivery costs. Most items under the Supply Agreement could be produced in-house or purchased by FRG far less expensively using alternative suppliers. Because the Debtor was barred from purchasing core goods from suppliers other than HB3, FRG was trapped in a nonviable business—with its 2022 tax return showing a loss of $165,386 in 2022 and its income statement as of October 30, 2023, showing a net loss of $227,449.63. Further, the Debtor was forced to defend the HB3 Litigation. Consequently, the Debtor borrowed additional funds from MNG as it waited for its day in court. Due to the extremely heavy dockets in the local trial courts, fourteen months passed since the TRO and the Debtor still did not have its day in court. The Debtor had a choice to either cease operations or file this proceeding. HB3 has filed a claim (the "HB3 Claim") in this proceeding which subsumes the claim that it filed in the HB3 Litigation.

On March 5, 2024, FRG removed the Removed Action to the Bankruptcy Court and it was assigned Adversary Proceeding No. 24-2007. The Debtor disputes liability for the claims set forth in the Removed Action. On May 24, 2024, HB3 filed its Complaint for Reclassification or Equitable Subordination of Claim of MNG Investments, LLC styled *HB3, LLC v. MNG Investments, LLC*, Adv. Pro No. 24-2038.

On October 15, 2024, the Debtor, HB3, and the Non-Debtor Defendants participated in a mediation with Subchapter V Donald W. Mallory serving as a mediator. The Debtor, HB3, and the Non-Debtor Defendants reached a global settlement of claims. On December 6, 2024, the Debtor filed an amended motion to settle its disputes with HB3. As outlined in the motion, the Debtor and HB3 desired to resolve claims and potential claims against one another as set forth in the settlement agreement (which was served on all parties-in-interest), including, but not limited to, finally settling, resolving, and releasing all claims, issues, and disputes with HB3 The Debtor is filing this Amended Plan in accordance with the settlement agreement, and this Amended Plan is contingent upon Court approval of the settlement agreement. Under the settlement agreement, the Allowed HB3 Claim will be treated as an allowed claim of $290,000, consisting of a priority claim in the amount of $9,791.87 for the Unpaid Goods and a general unsecured claim for the remaining balance. Once the HB3 distribution payments total $270,000, then the amount of any excess will be reallocated to other general unsecured claimants.

## B.    Risks and Benefits Related to the Reorganized Debtor

The risks associated with the Plan are that the Debtor will be unable to receive a favorable ruling with respect to the HB3 Claim. If HB3 prevails in its claim, then general unsecured creditors could receive substantially less in recovering their claims will receive nothing for their claims because the Debtor will cease operations. —The Debtor, however, believes this risk is relatively low due to its strong defenses to HB3's claim; however, the costs of litigation of the HB3 Claim could possibly result in the Debtor's closure.

If the Amended Plan is approved, then the Debtor is projecting an approximate 90% distribution to unsecured creditors.   Debtor prevails in the HB3 Claim, then the Debtor projects that all creditors will receive a 100% distribution.  The Debtor believes that it is in a strong position to grow its business and customer base.  Following the Petition Date, the Debtor has become a viable business merely by producing in-house many of the goods that were covered by the Supply Agreement.  The Debtor believes that, once it changes suppliers for its bagels from HB3, its net profit will rise substantially.  The creditors, which include vendors and lessors, will also have the Debtor as an ongoing customer and tenant for their future business.  Moreover, the employees of the Debtor will have secure employment and a stable source of income and health benefits.

### C.   Ongoing Operations

Debtor intends to continue the employment of Jeremy Fox, who is an insider.  At the time of the filing of the Bankruptcy Case, Mr. Fox was receiving approximately $1,200 per month in connection with his duties for the Debtor.  For so long as Mr. Fox continues on with his current responsibilities, it is anticipated that his pay will remain the same or increase only with cost-of-living adjustments.  The ongoing operations also assume that the Debtor will cease purchasing most products from HB3, and such products will  and will instead be produced in-house, with bagels to be supplied by Sammy's Bagels (a company owned by Mr. Fox).  Further, the Debtor will likely need to finance new restaurant equipment at the Bexley location, which is expected to cost about $1,800 per month.  The equipment currently in place is old and used, and it was being leased for $500 per month but the lease expired.  The owner of the equipment (HB3) will need to dismantle and transport the equipment away from the location at a mutually convenient time.

## V.   LIQUIDATION ANALYSIS

Attached as Exhibit 1 is the Debtor's hypothetical liquidation analysis, which assumes the conversion were to occur on or about June March 1, 20245.  The liquidation analysis is generous for the creditors in its assumptions of value because it assumes that the Debtor's assets have not depreciated in value since the appraisal which occurred as of September of 2022.  Further, the value is "fair market value-installed," not liquidation value.  MNG has a blanket lien on the Debtor's assets and is undersecured.  The cash assets of the Debtor will be minimal, and will not be enough to cover but a small fraction of administrative claims.  The expenses to be paid from the liquidation include, but are not limited to, taxes, wind down expenses, liquidation expenses, accounting expenses, and attorney's fees.  Accordingly, under a Chapter 7 liquidation, there is zero chance that unsecured creditors will receive any distribution whatsoever.

On the other hand, under the Plan, unsecured creditors are projected to receive $371,031.00425,952 over five years.

## VI.   PLAN PAYMENT AND COMMITMENT PERIOD

The Plan provides for a reorganization and restructuring of Debtor's financial obligations.  The Plan provides for a distribution to creditors in accordance with the terms of the Plan by the Distribution Agent over the course of the Term, which is a total of five years.  The Plan provides for monthly payments on the MNG pre-petition secured debt amortized over ten years, accruing interest at 9.5% per annum.  As to the other debt owed by the Debtor, the Plan provides for payment

in full of all Allowed Claims over the life of the Plan with payments to be made ~~twice~~ quarterly per year (beginning on the 15th day following the third full month after the Effective Date). Assuming an Effective Date of ~~June~~ March 1, ~~2024~~2025, the distributions to be made are as follows:

| | | |
|---|---|---|
| First Distribution | 4/15/2025~~15-Oct-24~~ | $36,387.75~~$2,311~~ |
| Second Distribution | 7/15/2025~~15-Apr-25~~ | $36,387.75 ~~$17,414~~ |
| Third Distribution | 10/15/2025~~15-Oct-25~~ | $36,387.75 ~~$33,299~~ |
| Fourth Distribution | 1/15/2026~~15-Apr-26~~ | $36,387.75 ~~$31,048~~ |
| Fifth Distribution | 4/15/2026~~15-Oct-26~~ | $26,795.99 ~~$37,527~~ |
| Sixth Distribution | 7/15/2026~~15-Apr-27~~ | $26,795.99 ~~$36,135~~ |
| Seventh Distribution | 10/15/2026~~15-Oct-27~~ | $26,795.99 ~~$43,872~~ |
| Eighth Distribution | 1/15/2027~~15-Apr-28~~ | $26,795.99 ~~$42,969~~ |
| Ninth Distribution | 4/15/2027 | $24,162.63 |
| Ten Distribution | 7/15/2027 | $24,162.63 |
| Eleventh Distribution | 10/15/2027 | $24,162.63 |
| Twelfth Distribution | 1/15/2028 | $24,162.63 |
| Thirteenth Distribution | 4/15/2028 | $22,872.79 |
| Fourteenth Distribution | 7/15/2028 | $22,872.79 |
| Fifteenth Distribution | 10/15/2028 | $22,872.79 |
| Sixteenth Distribution | 1/15/2029 | $22,872.79 |
| Seventeenth Distribution | 4/15/2028 | $22,582.50 |
| Eighteenth Distribution | 7/15/2028 | $22,582.50 |
| Nineteenth Distribution | 10/15/2028 | $22,582.50 |
| Twentieth Distribution | 1/15/2029 | $22,582.50 |
| ~~Ninth Distribution~~ | ~~15-Oct-28~~ | ~~-$51,385~~ |
| ~~Tenth Distribution~~ | ~~15-Apr-29~~ | ~~-$51,447~~ |
| ~~Eleventh Distribution~~ | ~~15-Jul-29~~ | ~~-$28,622~~ |

The classes of claims and treatment proposed for each are summarized in the below table and further described in Section VIII, below.

As outlined below, the Plan proposes to treat the following categories and Classes of Claims as follows, assuming such claims are determined to be Allowed:

13

| Class | Description | Treatment Summary | Voting Status |
|-------|-------------|-------------------|---------------|
| Class 1 | Allowed Administrative Expense Claims, including Section 503(b)(9) Claims | Paid pro-rata with other holders of Allowed Administrative Expense Claims in accordance with terms, in full in Cash or paid over the period of the Plan | Non-voting |
| Class 2 | Allowed Priority Tax Claims | After payment of Class 1 Claims, paid in Cash or paid over the period of the Plan as provided for by Section 1129(a)(9)(c) | Non-voting |
| Class 3 | MNG Secured Claim | Paid in full—directly by the Debtor on a monthly basis—with 9.5% interest, amortized over 10 years at $4,203.43—— per month, with a balloon payment or refinance to come at the end of the Plan. | Voting |
| Class 4 | General Unsecured Creditors with Allowed Claims | After payment in full of Allowed Class 1 and 2 Claims, paid pro rata with any Allowed Class 5 Claim over the remaining term of the Plan. | Voting |
| Class 5 | HB3 Claim | After payment in full of Allowed Class 1 and 2 Claims, paid pro rata with any Allowed Class 4 Claim over the remaining term of the Plan. | Voting |
| Class 6 | Equity Interest | Retained | Non-voting |

## VII.  PROJECTIONS

Debtor anticipates it will be able to pay current operating expenses and fund the Chapter 11 Plan payments.  The Debtor has reviewed the current and historical financials and compiled the projections attached hereto as Exhibit 2.  The forecast includes is based on some historical data and projections of cash flow and the balance sheet through the anticipated date for confirmation and demonstrate the availability of funds to provide for the plan payments as set forth in this document. The forecast demonstrates that the Plan is feasible.

## VIII.  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

In accordance with Section 1123(A) of the Bankruptcy Code, all Claims and Interests are placed in the Classes set forth below. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is allowed.

### A.    Class 1: Administrative Claims under 11 USC 507(a)

14

**Description.**   Class I consists of the Allowed Administrative Claims under Section 507(a) and Section 503(b)(9) of the Bankruptcy Code.

The Debtor's attorney's fees approved by the Court and payable to the law firm of Bailey Cavalieri LLC will be paid following the later of the Confirmation Date or approval by the Court first from the retainer deposit on hand from prior to the Petition Date and then from the distributions under the Plan.

The Subchapter V Trustee fees approved by the Court will be paid first from the funds that have been put on deposit with the Subchapter V Trustee since the Petition Date and then from the distributions under the Plan.  It is anticipated that the Subchapter V Trustee will have sufficient funds on deposit to pay his fees.

The Allowed 503(b)(9) Claims approved by the Court will be paid from the distributions under the Plan.

The Debtor's Bankruptcy Case will not be closed until all Allowed Administrative Expense Claims are paid in full.  Class 1 Creditor Allowed Administrative Expense Claims are estimated as of the date of the filing of this Plan, after deduction of any deposits held by the claimants, to not exceed the amount of $~~175~~90,000.

If the Plan is confirmed pursuant to Section 1191(b), any and all Claims of a kind specified in Sections 507(a)(2) or 507(a)(3) of the Bankruptcy Code will be paid from the payments made to the Subchapter V Trustee for distribution to creditors.

**Treatment.** All Class 1 Claims that are due and owing as of the filing of the Plan shall be paid in full by the Effective Date or as soon as practicable thereafter following approval of professionals' fees.

**Status and Voting.** Class 1 consists of administrative expense claims and are not entitled to vote on a Plan.

### B.      Class 2: Priority Tax Claims

**Description.** Class 2 consists of certain Priority Tax Claims. The Ohio Department of Taxation has filed a priority claim in the amount of $14,407.47.  The Debtor believes that this amount may be excessive, but priority claims will be paid in full.

**Treatment.** The Priority Tax Claims still outstanding as of the Effective Date will be paid in full, with payment commencing only after all Allowed Class 1 Claims have been paid.  This treatment is consistent with Section 1129(a)(9) of the Bankruptcy Code.

**Status and Voting.** Class 2 is unimpaired under the Plan and, accordingly, is not entitled to vote to accept or reject the Plan.

### C.      Class 3: MNG Secured Claim

**Description.**  Class 3 consists of the MNG secured debt that arose before the Petition Date.  The debt is $337,499.92 and is secured by substantially all assets of the Debtor.  The debt consists of $325,000 principal, with the remaining amount unpaid interest.  MNG has made a Section 1111(b) election, meaning that MNG is entitled to receive payments with a face value equal to the amount of its claim, the present value of which must at least equal the value of the collateral.

**Treatment.**  The Class 3 Claim shall be paid under the Plan in monthly payments of $4,205.43 over the term of the Plan with the first payment commencing on the 15th of the month following the first full month after the Effective Date.  Regardless of whether the Plan is a consensual or nonconsensual Plan, the payments shall be made directly by the Debtor.  MNG will be entitled to a balloon payment at the end of the Plan.  The Class 3 Claim shall accrue interest at 9.5%.  MNG shall retain its security interest and liens against all assets of the Debtor.  In the event of interim sales of assets by the Debtor out of the ordinary course of business, MNG shall be entitled to be paid from such proceeds.

**Status and Voting.**  Class 3 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

### D.    Class 4: General Unsecured Creditors with Allowed Claims

**Description.**  Class 4 consists of Allowed general unsecured claims consists of the Debtor's vendor and service providers, and does not include the Allowed HB3 Claim 's tort-related claims described in Class 5.  This class of creditors is estimated to have claims amounting to $184,363.55.

**Treatment.**  After Class 1 and Class 2 Claims are paid in full, distributions to Class 4 creditors shall commence on a pro rata basis and pro rata with any the nonpriority portion of the allowed claims of Class 5.

**Status and Voting.**  Class 4 is impaired under the Plan and, accordingly, is entitled to vote to accept or reject the Plan.

### E.    Class 5: The Allowed HB3 General Unsecured Claim

**Description.**  Class 5 consists of the tort claim of the Allowed HB3 Claim.  The Allowed HB3 Claim shall be in the amount of $290,000, comprised of HB3's proof of claim (Claim No. 7 1) consists of (i) a Section 503(b)(9) claim in the amount of $9,791.87, which the Debtor will treat as an administrative claim in Class 1 to be paid in full with the remaining balance to be treated as a general unsecured claim.  The maximum distribution to HB3 will be $270,000., and (ii) an unsecured claim of $1,317,538.50 arising from HB3's allegations of fraudulent transfer and related claims.

HB3 is treated separately from Class 4 because the Allowed HB3 Claim is a compromised claim (contingent upon Court approval) arising from HB3's filed claim (Claim No. 7) with the following components:

- A priority claim in the amount of $9,791.87 for goods received by FRG just prior to the filing of the Bankruptcy Case;

16

- Performance Bonus Payments in the amount of at least $175,000 under a disputed supply agreement;

- License Fees of $175,000 under a disputed supply agreement;

- Equipment (i.e., the Disputed Assets) claimed to be owned by HB3 that was transferred to FRG as part of the Fox's Food asset purchase but never paid for by Fox's Food.  At that time, the equipment had an appraised value of $44,500 (installed).

- Lost profits in the minimum amount of $827,538.50, with continued damages associated with the failure to adhere to the supply agreement.

Pursuant to the compromise, HB3 has waived its interest in the Disputed Assets, and it has collapsed its claim to $290,000, having a priority component for the unpaid prepetition goods and a general unsecured claim for the remaining balance.  Also, pursuant to the compromise, HB3 has agreed to cap its total distribution at $270,000, regardless of the Debtor's financial performance.

**Treatment.** The Section 503(b)(9) portion of the claim of $9,791.87 shall be paid as a priority claim, prior to any Class 4 distributions.  The remaining balance of the Allowed HB3 Claim shall be treated as a general unsecured claim and shall be paid to the extent that the HB3 General Unsecured Claim becomes an Allowed claim, then (after Class 1 and Class 2 claims have been paid in full) distributions on the Class 5 claim shall be made on a pro rata basis with the Class 4 claims.  When HB3 distributions under the Plan have totaled $270,000, the Allowed HB3 Claim will be deemed satisfied and remaining distributions, if any, shall be allocated to Class 4 claimants. In no event shall the total distribution on the HB3 Allowed Claim exceed $270,000.

**Status and Voting.** Class 5 is impaired under the Plan and entitled to vote to accept or reject the Plan.

### F.    Class 6: Equity

**Description.**  Class 6 consists of the Equity ownership in the Debtor.

**Treatment.**  Class 6 Equity owners shall be entitled to retain their interests.

**Status and Voting.**  Class 6 is unimpaired under the Plan and not entitled to vote on the Plan.

## IX.    IMPLEMENTATION OF THE PLAN

### A.    Operations of the Reorganized Debtor

The Debtor anticipates that the continued operations of the business will be adequate to fund the Plan over the Term.  The Plan is based on the Debtor's in-house production and the utilization of Sammy's Bagels for its supply of bagels, as well as the purchase of new equipment.  If the Debtor were forced to use HB3 as its supplier, then the cash available for Plan payments will likely be cut by approximately two-thirds through the termination date of the Supply Agreement.

### B.    Vesting of Assets in Reorganized Debtor in a Consensual Plan

Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date of a confirmed Plan, the Retained Property and Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### C.    Vesting of Assets in Reorganized Debtor in a Non-Consensual Plan

Property of the estate includes, in addition to the property specified in Section 541 of the Bankruptcy Code: (1) all property of the kind specified in Section 541 of the Bankruptcy Code that the debtor acquires after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first; and (2) earnings from services performed by the Debtor after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, whichever occurs first. As of the date that the case is closed, dismissed or converted to a case under chapter 7, the Retained Property and any Exempt Property shall vest in the Reorganized Debtor free and clear of all liens, claims, interests or other encumbrances except as provided in the Plan. On or after the Effective Date, except as otherwise provided in the Plan, Reorganized Debtor may operate its business and may use, acquire or dispose of property with the supervision or approval of the Subchapter V Trustee and the Bankruptcy Court.

## X.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless rejected prior to the Effective Date, all executory contracts shall be assumed as of the Effective Date of the Plan and will be performed in accordance with their terms unless amended by agreement of the Debtor and applicable party. ~~For avoidance of doubt, the Debtor is not a party to the Supply Agreement, and, if it were ever held to be a party to the Supply Agreement, then the Supply Agreement shall be rejected as of the Effective Date.~~

## XI.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Delivery of Distributions

1.    The first distribution under the Plan will be made by the Debtor to MNG on the 15th of the month following the first full month after the Effective Date.  The first distribution shall be made to Class 1 claimants on the 15th day following the third full month after the Effective Date, or upon Court approval of fees whichever comes later.  The Subchapter V Trustee shall be paid from the funds that he is holding on deposit after approval by the Court.

2.    If the Subchapter V Trustee is the Distribution Agent under the Plan, the Debtor will pay to the Subchapter V Trustee all amounts due to be distributed under the Plan, except the payments to Class 3, on or before the first of the month for each month in which distributions are to be made in accordance with the Plan.

3.   Subject to Bankruptcy Rule 9010, all distributions to holders of Allowed Claims (except the payments to Class 3), in all Classes shall be made by the Distribution Agent (a) at the addresses set forth on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the elate of such holders' proof of claim, or (c) at the addresses reflected in the Debtor's schedules if no proof of claim has been filed.

4.   For a non-consensual plan, notwithstanding Section 1194(b) of the Bankruptcy Code, Debtor shall make the monthly payments directly to the Class 3 claimholder.

5.   The Debtor or (if any purpose would be served) the Subchapter V Trustee shall object to Claims within 60 days after the Effective Date.

6.   At the close of business 60 days after the Effective Date, the claims register will be closed, and there will be no further changes in the record holders of any Claims. The ~~Reorganized Debtor or the Subchapter V Trustee~~Distribution Agent will have no obligation to recognize any transfer of any Claim occurring after the close of business 60 days after the Effective Date, and will instead be entitled to recognize and deal for all purposes under the Plan (except as to voting on the Plan) with only those holders of record as of the close of business as of that time.

7.   If any payment to a creditor would be less than $5.00, the Distribution Agent is authorized to hold that payment until the next distribution and pay both installments at the same time.

### B.      Undeliverable Distributions

If any distribution with respect to any Claim is returned as undeliverable, no further distributions to such holder shall be made unless and until the Distribution Agent is notified of such holder's then current address, at which time all distributions owing to such holder shall be made to such holder without interest. All claims for undelivered distributions made to holders of Allowed Claims shall be made within ~~30~~ 90 days of the relevant distribution date. After such date, all unclaimed distributions shall revert to the Reorganized Debtor and the Claim of any holder or successor to such holder with respect to such distribution shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

## XII.   <u>MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN</u>

The Debtor may alter, amend or modify this Plan under Section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code. After the Confirmation Date, the Debtor may only alter, amend or modify the Plan in accordance with Section 1193(b) or (c), as applicable, of the Bankruptcy Code.

## XIII.  RETENTION OF JURISDICTION

### A.    Continuing Jurisdiction of the Bankruptcy Court

Pursuant to Sections 1105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of these proceedings to the extent permitted by applicable law, including but not limited to:

1.  to determine any and all applications, adversary proceedings, and contested matters pending as of the Effective Date;

2.  to determine any and all objections to the allowance of Claims;

3. to determine any and all applications for allowance of compensation and reimbursement of expenses;

4. to determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

5.  to effectuate payments under and performance of the provisions of the Plan;

6.  to enter such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

7. to determine the Reorganized Debtor's motion, if any, to modify the Plan in accordance with Section 1193 of the Bankruptcy Code;

8. to issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

9. to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10. to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any related documents;

11. to hear and determine any issue for which the Plan or any related document requires a Final Order of the Bankruptcy Court;

12. to enter a final decree closing the Bankruptcy Case;

13. to determine any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

14. to determine any increase or decrease in the debtor's monthly payment, as provided in the Plan;

15. to approve, pursuant to Section 365 of the Bankruptcy Code, the assumption,

20

assignment or rejection of any executory contract or unexpired lease, except as otherwise provided in the Plan;

16. to determine a request for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto.

### B.      District Court Jurisdiction

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the Bankruptcy Court in this Article shall be deemed to be a reference to the United States District Court for the Southern District of Ohio.

## XIV.   SPECIAL PROVISIONS

### A.      Fees of Professionals

With respect to the professional fee claims arising after the Effective Date, the Reorganized Debtor shall pay such professional fee claims in the ordinary course of its business without the necessity of any professionals being required to file an application for such professional fee claims.

### B.      Exculpation and Limitation of Liability

On the Effective Date, the Debtor and all holders of Claims against and Interests in the Debtor will be conclusively deemed to release all professionals retained by order of the Bankruptcy Court in the Chapter 11 Case and all of such professionals', respective officers, directors, employees, principals, partners and agents, and all officers and directors of the Debtor holding such offices at any time through the Effective Date from all liabilities, claims, costs, damages and expenses, except for Claims arising from fraud, willful misconduct or gross negligence to such persons, arising out of the Chapter 11 through the Effective Date.

### C.      Subchapter V Trustee Disclosures and Fees

1. For a non-consensual Plan, the Subchapter V Trustee shall continue to be paid at his hourly rate subject to post-confirmation fee applications under Section 330 of the Bankruptcy Code until the completion of the Plan. The Debtor shall pay the fees and expenses directly to the Subchapter V Trustee within 30 days after the entry of the order approving same.

2. If the Plan is nonconsensual, the Debtor will provide any information to the Subchapter V Trustee that is reasonably requested in relation to the determination of any distribution.

### D.      Bar Date for all Administrative Expense Claims

All requests for payment or any Administrative Expense Claim are subject to authorization and approval of the Bankruptcy Court. Holders of Administrative Expenses Claims that do not file a request with the Bankruptcy Court and serve on all parties entitled to notice thereof no later than

sixty (60) days after the Effective Date, are forever barred from asserting such claims except as provided in the Plan. Any objections to an Administrative Expense Claim shall be filed in accordance with the Bankruptcy Rules and the local rules of the Bankruptcy Court.

### E.   Suspension of Payments

If payments under a non-consensual Plan are made by the Subchapter V Trustee, the Debtor may apply to the Court for suspension of payments. Notice of such request for suspension of payments shall be given to the Trustee, the United States Trustee and all affected parties. The Court, after notice and a hearing may suspend the payments for not more than ninety (90) days. Such suspension shall extend the length of the term of the Plan by the term of the suspension.

### F.   Discharge Provisions

If the Plan is consensual, a discharge shall issue upon confirmation and the Debtor shall make all required payments under the Plan.

If the Plan is nonconsensual, payments under the Plan will be made by the Subchapter V Trustee appointed by the Court and a discharge under Section 1192 shall be issued when the final distribution is made under the terms of the Plan.

### G.   Protection of Creditors under Section 1191(c) if Payments are not made under the Plan or any Amended Plan

Should the Debtor not make payments as provided in the Plan within 45 days of the date the payment is due under the Plan or any amended Plan or as authorized by the Court, unless otherwise ordered by the Court, secured and unsecured creditors shall not be bound by the discharge injunction as to their collateral and may proceed against their security interest. The rights of unsecured creditors shall be restored to proceed against the Debtor for the total amount of the debt owed, minus any payment received under the Plan.

### H.   Treatment of Allowed Secured Claims

The amount of any allowed secured claim shall be that amount as proposed in the Plan unless amended pre-confirmation by an amended Plan or by Court Order. Any deficiency amount of a proposed secured claim shall be paid as an unsecured claim, unless otherwise provided for in the Plan.

### I.   Interest Rate

The interest rate applicable to the Class 3 claims shall be 9.5%.

No interest shall be paid on the Unsecured Claims.

### J.   Set Offs

The Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims

of any nature whatsoever which the Reorganized Debtor may have against the holder of such Claim to the extent such claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor, of any such claim or counterclaim that it may have against such holder.

### K.  Manner of Payments

Unless the person or entity receiving a payment agrees otherwise, any payment of Cash to be made by the Distribution Agent shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

### L.  Time Bar to Cash Payments

Checks issued by ~~the Reorganized Debtor or~~ the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly, as applicable, to either the Reorganized Debtor or Distribution Agent by the holder of the Allowed Claim with respect to which such check originally was issued.

Any Claim in respect of such a voided check shall be made on or before the later of (i) the first anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check if such check represents a final distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and forwarded to the Reorganized Debtor who shall retain all monies related thereto.

### M.  Payments and Distributions on Disputed Claims

No partial payments and no partial distributions shall be made with respect to a disputed Claim until the resolution of such disputes by settlement or final order. As soon as practicable after a disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

### N.  Approval of Executory Contract Rejection and Assumption

Entry of the Confirmation Order shall constitute approval, pursuant to Section 365(a) of the Bankruptcy Code of the rejection and assumption of any executory contracts and unexpired leases rejected pursuant to the Plan. Notwithstanding anything contained herein to the contrary, the Debtor hereby retains the right to add or delete any executory contract or unexpired lease that is designated for rejection at any time prior to the Confirmation Date, upon notice to parties affected by such change.

### O.  Post-Filing Date Contracts and Leases

Executory contracts and unexpired leases entered into, and other obligations incurred after the Petition Date by the Debtor shall, unless expressly rejected, be performed by the Reorganized Debtor in the ordinary course of its business affairs.

**P.     Notice of Default**

Unless expressly provided herein to the contrary, no claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to the Reorganized Debtor and the Subchapter V Trustee if still serving in the Case. The Reorganized Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor.

## XV.   <u>DISCHARGE OF ALL CLAIMS AND RELEASES</u>

**A.     Discharge pursuant to Section 1141(a)**

Upon the granting of a discharge under Section 1141(d) of the Bankruptcy Code, the Discharge Order shall operate as a discharge pursuant to, and to the fullest extent provided in and permitted by, Section 1141(d) of the Bankruptcy Code, of any and all debts of, Claims against, and liens on the Debtor, its assets, or properties, which debts, Claims and liens arose at any time before the entry of the Confirmation Order, and any debt of a kind:

      a.     a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

      b.     a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

      c.     the holder of a Claim based upon such debt has accepted the Plan as specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the creditor has accepted the Plan.

**B.     Discharge pursuant to Section 1192**

As soon as practicable after completion by the Debtor of all payments due not to exceed five (5) years or as the Bankruptcy Court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(l)(A) of this title, and all other debts allowed under Section 503 of this title and provided for in the Plan, except any debt:

      a.     on which the last payment is due under the Term; or

      b.     of the kind specified in Section 523(a) of this title.

## XVI.   <u>MISCELLANEOUS PROVISIONS</u>

**A.     Successors and Assigns**

The rights, duties and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such person.

**B.     Binding Effect**

24

The Plan shall be binding upon, and shall inure to the benefit of the Debtor, the holders of all Claims and Interests and their respective successors and assigns.

### C.      Modification of Payment Terms

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

### D.      Valuation

Any claim for fees, costs, or other charges shall be made by the creditor by application to the Court. Such fees, costs or charges must be reasonable as required by Section 506(6) of the Bankruptcy Code.

### E.      Default and Waiver

Any default of the Debtor that is not proposed to be cured in the Plan herein is deemed waived by the Confirmation of the Plan.

### F.      Substitution of Collateral

If any collateral of the Debtor is substantially damaged while there is still an unpaid Claim which is secured by the collateral, the Debtor shall have the option of using the insurance proceeds to either repair the collateral, pay off the balance of the Allowed Secured Claim if the secured creditor is a named loss payee on the policy, or to substitute collateral by purchasing replacement collateral and the Reorganized Debtor will continue to pay the secured claim.

### G.      Termination of Subchapter V Trustee

If the Plan is confirmed consensually pursuant to Section 1191(a), the Subchapter V Trustee shall be terminated upon Substantial Consummation.

If the Plan is Confirmed non-consensually pursuant to Section 1191(b), the Subchapter V Trustee shall be terminated after the final distribution payment made pursuant to the terms of the Plan.

The Subchapter V Trustee shall be terminated upon dismissal of the case or its conversion to another chapter.

**H.      Tax Consequences**

Implementation of the Plan may result in federal income tax consequences to holders of claims, equity interest holders and to the Debtor. In this case, most of the creditors will not be in full the amount of their Claims. Tax consequences to a particular creditor or equity interest holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the equity interest holder. CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.

**I.      Risk to Creditors Under the Debtor's Plan**

Claimants and equity interest holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be funds to pay Claims of creditors.

Dated: ~~March 5,~~ December  30, ~~2024~~ 2025            */s/ Jeremy Fox via email authority granted to Matthew   T.   Schaeffer   ~~March   5, 2024~~ December  30 , 2025*

_____
Jeremy Fox, Authorized Representative

26

**EXHIBIT 1**
**Liquidation Analysis**

**Assets (Estimated)**

| | | |
|---|---|---|
| **Checking/Savings** | ~~25~~60,000 | |
| **Cash on Hand** | 2,500 | |
| **Total Checking/Savings** | | ~~27~~62,500.00 |

**Total Accounts Receivable**  10,000.00

**Other Current Assets**
Inventory Asset          8,240.00
Prepaid Utilities          421.91
Security Deposit – NM      3,904.00
Security Deposit – Office  1,553.00
**Total Other Current Assets** 14,118.91
**Total Current Assets**   53,464.59 (Secured by MNG)

**Fixed Assets**
**FMV – Installed**        233,110.00 (Secured by MNG)

**TOTAL ASSETS**    $~~324~~359,074.59 (of which $~~37~~72,500 is unsecured)

---

**Chapter 7 Liquidation**          $~~37~~72,500 Assets

**Chapter 7 Administration Fees**
    **Attorneys**          -  2,500
    **(Trustee % compensation)**     - 6,875~~4,500~~

**Remaining for Ch. 11 Admin Fees**   $~~30,500~~63,125

**Ch. 11 Admin Fees**          -$8~~175~~,000

**Remainder for unsecureds**       $0

---

**Plan**

**Net Income for Unsecured Creditors**
    $~~186,030.76~~425,952.00

**Unsecured Claims (estimated)**      $~~185~~475,000.00
                  Distribution ~~100~~90%

~~**Worst Case Unsecured Claims**~~          ~~$1,502,538.50~~
~~(with full HB3 Claim)~~

**EXHIBIT 2**
**Projections**

**[Next Page]**